UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN RAMON TORRES, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. H-09-2056 |
| § | |
| SGE MANAGEMENT LLC, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Pending before the Court is the defendants Ignite Holdings LTD ("Ignite"), Chris Domhoff, Rob Snyder, Pierre Koshakji, Douglas Witt, Steve Flores, Michael Tacker, Donny Anderson, Trey Dyer, Steve Fisher, Randy Hedge, Brian Lucia, Logan Stout, Presley Swagerty, SGE Management LLC, Stream Gas & Electric LTD ("Stream Electric"), Stream SPE GP LLC, and Stream SPE LTD's (collectively, the "defendants") motion to dismiss for improper venue, for failure to state a claim and for failure to plead fraud with particularity (Docket Entry No. 24). The plaintiffs Juan Ramon Torres and Eugene Robison (collectively, the "plaintiffs") filed a response in opposition to the defendants' motion (Docket Entry No. 30) and the defendants filed a reply to the plaintiffs' response (Docket Entry No. 33). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby grants the motion.

**II. Factual Background**

Ignite, the marketing arm of Stream Electric, is a retailer of electricity and natural gas services that conducts its sales through a system in which independent employees (known as independent agents, "IAs") make sales to consumers and recruit individuals to

become new IAs.  The plaintiffs are former IAs.  Premised upon their experiences in this capacity, they have alleged breaches of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by the defendants.

Under Ignite's business structure, IAs are categorized in one of multiple tiers.  An IA begins their tenure with the company as an "associate" and works their way into higher tiers by selling Ignite's products and recruiting new IAs.  An IA's pay is dependent on how many IAs they recruit and the level of sales made by the IA and those that they have recruited.

When the plaintiffs became IAs, they entered into a three part agreement with Ignite consisting of:  a compensation plan, the policies and procedures (the "P&P") and the terms and conditions (the "T&C").  The plaintiffs entered into this agreement via "clickwrap" (manifesting intent to contract by clicking on an online "button").  The P&P and the T&C both contained arbitration agreements (collectively, the "arbitration agreement").  In pertinent part, the P&P provide that:

> IAs agree that any claim, dispute or other difference between IAs and Ignite or among IAs and Ignite will be exclusively resolved by binding arbitration . . . with arbitration to occur at Dallas, Texas . . . .
>
> Ignite reserves the right to amend these Policies and Procedures from time to time in its sole discretion as Ignite deems necessary . . . .  IAs understand and acknowledge that [their agreement with Ignite is] governed under the laws of the great State of Texas . . . .
>
> [M]odifications to the [P&P and the compensation plan] will, upon notice to the IA or by publication by Ignite in the Power Center, become a binding part of the Independent Associate Agreement.  IAs accept publication of these Policies and Procedures in the Power Center as notice of such modifications and assume responsibility for periodically reviewing these Policies and Procedures in the Power Center for such modifications.

Further, the T&C provides that:

> [IAs] agree to comply with the [P&P] and the [compensation plan,] both of which are incorporated into and made a part of the[] Terms and Conditions . . . . [IAs] understand that the[] Terms and Conditions, the [P&P,] or the [compensation plan] may be amended at the sole discretion of Ignite, and [IAs] agree to abide by all such amendments. Notification of amendments shall be posted in Ignite's website. Amendments shall become effective 30 days after publication. The continuation of my Ignite business or my acceptance of bonuses or commissions shall constitute my acceptance of any and all amendments . . . .
>
> This Agreement or any related agreement shall be governed by and construed and enforced under the laws of the State of Texas . . . . In the event a dispute or other difference between [an IA] and Ignite or its parents, subsidiaries and affiliated companies, including but not limited to those arising out of or relating to this Agreement and the [P&P,] it is agreed that such disputes shall be exclusively resolved by binding arbitration . . . .
>
> In the event of a conflict between the [P&P] and any provision(s) herein, the provision(s) of the [P&P] shall be deemed controlling.

After their tenure with Ignite, plaintiffs brought this lawsuit. Various companies associated with Ignite and employees of Ignite were named as co-defendants. In the lawsuit, the plaintiffs asserted that Ignite was an illicit pyramid scheme run by the defendants, the operation of which violated RICO. Further, they alleged mail fraud and wire fraud as the predicate RICO offenses.

### III. Contentions

#### A. The Defendant's Contentions

The defendants assert that the claims against them should be dismissed. Initially, they argue that, because Ignite and the plaintiffs entered into a valid agreement to arbitrate any disputes, venue is improper and the case should be dismissed. Further, the defendants state that the plaintiffs have not satisfied requisite pleading standards. Lastly, they proffer that the plaintiffs have failed to state a claim under 18 U.S.C. § 1962.

### B. The Plaintiffs' Contentions

The plaintiffs state that dismissal of their claims is improper. To this end, they argue that the arbitration agreement is unenforceable. Further, they assert that their complaint properly pleads viable causes of action under 18 U.S.C. § 1962.

### IV. Standard of Review

"Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss an action on the basis of improper venue." *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002); *De Joseph v. Odfjell Tankers (USA), Inc.*, 196 F. Supp. 2d 476, 479 (S.D. Tex. 2002). The majority of the courts conform to the standard that once a defendant has raised the improper venue issue by motion, the burden of sustaining venue rests with the plaintiff. *McCaskey v. Cont'l Airlines Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). In the absence of an evidentiary hearing on the matter, courts will allow a plaintiff to carry this burden by establishing facts, taken as true, that establish venue. *McCaskey*, 133 F. Supp. 2d at 523; *Bigham*, 123 F. Supp. 2d at 1048; *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). The Court will accept uncontroverted facts contained in the plaintiff's pleadings as true, and resolve any conflicts in the parties' documents and affidavits in the plaintiff's favor. *McCaskey*, 133 F. Supp. 2d at 523. While a defendant need not affirmatively disprove all bases for a plaintiff's choice of venue, courts will provide the plaintiff the benefit of the doubt in ascertaining the controlling facts. *Id.*

In the present case, the above standard is to be applied to the question of whether an agreement to arbitrate renders venue improper. "[A]n arbitration clause is a 'kind of forum-selection clause' . . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 36 (1988)

(quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). As such, Judge Ewing Werlein, Jr.'s (S.D. Tex., Houston Div.) recent description of the relationship of forum selection clauses and Rule 12(b)(3) is informative:

> The Fifth Circuit "has noted, but declined to address, the 'enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed. R. Civ. P. 12(b)(1) [or] 12(b)(3).'" *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 961 (5th Cir. 1997)). "In any event, [the Fifth Circuit] has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue)." Id. (citing *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 & n. 3 (5th Cir. 1993)). A forum selection clause does not deprive a court of its jurisdiction; it merely limits a court's inquiry to the enforceability of that clause. See *Trafigura Beheer B.V. v. M/T PROBO ELK*, No. 06-20576, 2007 WL 2033336, at *1 (5th Cir. July 16, 2007). "[O]ther circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3)." *Lim*, 404 F.3d at 902. Defendants' Motion to Dismiss is therefore analyzed under Fed. R. Civ. P. 12(b)(3).

*Breakbulk Transp., Inc. v. M/V Renata*, No. H-07-2985, 2008 WL 1883790, at *1 n.1 (S.D. Tex. Apr. 25, 2008) (unreported opinion); *Lim*, 404 F.3d at 902.

## V. Analysis & Discussion

### A. The Arbitration Agreement and the Signatories Thereto

The defendants argue that this Court does not have jurisdiction over the present case because the parties previously agreed to arbitrate their disputes. "[A]rbitration agreements between an employer and an at-will employee are enforceable when there is an agreement that is valid under traditional contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 224 (Tex. 2003) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)); *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). There is "a strong presumption favoring arbitration, [though] the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M.*

*Davidson*, 128 S.W.3d at 227; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

The plaintiffs assert that the arbitration agreement is unenforceable because Ignite's obligations under the contract were illusory. "An illusory promise is one that fails to bind the promissor because he retains the option to discontinue performance without notice." *Johnston v. Kruse*, 261 S.W.3d 895, 898–99 (Tex. App.—Dallas 2008, no pet.) (citing *Rogers v. Alexander*, 244 S.W.3d 370, 382 (Tex. App.—Dallas 2007, no pet.)); *Carson v. Dynegy, Inc.*, 344 F.3d 446, 452 (5th Cir. 2003). "When illusory promises are all that support a purported bilateral contract, there is no contract." *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644–45 (Tex. 1994). With regards to arbitration agreements, the Supreme Court of Texas has noted that "most courts that have considered th[e] issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory." *J.M. Davidson*, 128 S.W.3d at 230 n.2 (citations omitted).

In pertinent part, the P&P provide that disagreements between IAs and Ignite will be "exclusively resolved by binding arbitration . . . ." Further, this document provides that "Ignite reserves the right to amend these Policies and Procedures from time to time in its sole discretion as Ignite deems necessary." Under this contract, amendments are effective upon notice to the IAs. Further, "IAs accept [online] publication of these [amendments] as notice of such modifications . . . ." The T&C contain similar clauses. In arguing that these provisions render the obligation to arbitrate illusory, the plaintiffs address two pertinent cases: *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), and *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002).

In H*alliburton*, the Supreme Court of Texas had to determine whether to enforce an arbitration agreement despite the plaintiff's assertions that the defendant's commitment to arbitrate was illusory. The plaintiff's argument was premised upon the fact that the defendant reserved the right to modify the pertinent contractual provisions. In finding the defendant's obligations non-illusory, the court held two factors to be outcome determinative: (1) any amendment to the contract would not be retroactive (arbitration would still be available for harms reported within ten days of the amendment); and (2) the contract required that all amendments be accompanied by reasonable notice of the changes. *Halliburton*, 80 S.W.3d at 569–70.

In *Davidson*, the Supreme Court of Texas was required to determine if a promise to arbitrate was illusory. In this case, the defendant maintained the right to unilaterally terminate an arbitration provision without giving notice to the plaintiff. There was no clause mandating that amendments would not be retroactive. Due to the absence of the two factors that rendered the agreement in *Halliburton* non-illusory, this case was distinguished from *Halliburton*. *Davidson*, 128 S.W.3d at 230–31. Accordingly, the court held that, assuming the trial court found the unilateral termination rights to apply to the arbitration agreement, the obligation to arbitrate was illusory.

The present suit is not factually consistent with either *Davidson* or *Halliburton*. The arbitration provision in this case can only be terminated *with notice* (in contrast to *Davidson*) and there is no clause prohibiting retroactive amendments (in contrast to *Halliburton*). As such, the Court will look to caselaw on illusory obligations for further enlightenment.

As previously discussed, "[a] promise is illusory when it fails to bind the promisor who retains the option of discontinuing performance without notice." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994)). Under this definition, in order for an obligation to be illusory, the promisor must be able to cease performance *without giving notice*. This is not consistent with the present factual scenario. Under the P&P, Ignite must give the plaintiffs notice prior to amending the arbitration agreement. Accordingly, the P&P does not satisfy the elements of an illusory agreement, and the underlying obligation to arbitrate is enforceable.[1]

### B. The Arbitration Agreement and the Non-Signing Parties

The defendants assert that, although not all of the defendants signed the arbitration agreement, the plaintiffs should be required to arbitrate *all* of their claims. On whether an arbitration agreement can be enforced by non-signatories, the Fifth Circuit has stated:

> Although arbitration is a matter of contract that generally binds only signatories, a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration. *Id*. at 526 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). In *Grigson*, we held that a non-signatory to an arbitration agreement can compel arbitration: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract. *Id*. at 527. We reasoned that equity does not allow a party to "seek to hold the non-signatory liable pursuant to

---

[1] The plaintiffs do not argue that the present dispute does not fall into the ambit of the arbitration agreement, nor do they argue that the "clickwrap" nature of their agreements invalidate the arbitration agreement. Moreover, the Court sees no immediate reason why these arguments would render the arbitration agreement unenforceable. Accordingly, these issues will not be further discussed. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28–38 (2nd Cir. 2002) (discussing clickwrap arbitration agreements).

> duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id*. at 528; see *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (stating that a plaintiff should not be able to claim the benefit of a contract and simultaneously avoid its burdens). "[T]he result in *Grigson* and similar cases makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003).

*Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (footnotes omitted). Thus, to apply this standard, the Court must determine whether the plaintiffs allege "substantially interdependent and concerted misconduct" by the signatory and non-signatory defendants.

In the current complaint, the plaintiffs allege that "all defendants have promoted the [alleged pyramid scheme] and therefore have engaged in a scheme and artifice to defraud." Further, the plaintiffs proffer that the defendants, "while not gathered under any single legal entity, together operate the [alleged pyramid scheme] by drawing in new victims to invest . . . ." Thus, as alleged, the defendants have acted in concert to promote, and subsequently enjoy the fruits of, an illegal enterprise. These accusations sufficiently assert a substantially interdependent and concerted misconduct. Accordingly, it is proper to require arbitration between the plaintiffs and the non-signatory defendants.

## VI. Conclusion

Based on the foregoing discussion, the Court hereby GRANTS the defendants' motion to dismiss for improper venue.

It is so **ORDERED**.

SIGNED at Houston, Texas this 6th day of November, 2009.

_____
Kenneth M. Hoyt
United States District Judge