# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 5, 2010

Lyle W. Cayce
Clerk

No. 09-20778

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

APR 0 1 2011

David J. Bradley, Clerk of Court

JUAN RAMON TORRES; EUGENE ROBISON,

　　　　　　　　　　　Plaintiffs–Appellants,

v.

S.G.E. MANAGEMENT, L.L.C.; STREAM GAS & ELECTRIC, L.T.D.; STREAM S.P.E. G.P. L.L.C.; STREAM S.P.E., L.T.D.; IGNITE HOLDINGS, L.T.D; CHRIS DOMHOFF; ROB SNYDER; PIERRE KOSHAKJI; DOUGLAS WITT; STEVE FLORES; MICHAEL TACKER; DONNY ANDERSON; TREY DYER; STEVE FISHER; RANDY HEDGE; BRIAN LUCIA; LOGAN STOUT; PRESLEY SWAGERTY,

　　　　　　　　　　　Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
(09-CV-2056)

Before GARZA and BENAVIDES, Circuit Judges, and LYNN, District Judge.*

LYNN, District Judge:**

　　Juan Ramon Torres and Eugene Robison appeal the district court's order dismissing their claims for improper venue based on the parties' agreement to

---

* District Judge of the Northern District of Texas sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arbitrate. Because we hold that the arbitration clause at issue is illusory, we reverse and remand.

## I

This appeal concerns a dispute over the enforceability of an arbitration clause. Stream Energy is a retail provider of electricity in Texas. It markets its product through its subsidiary, Ignite, which operates a multilevel marketing program. The program operates by recruiting persons to invest money to purchase the Ignite Services Program (ISP), which can only be purchased through a current member of Ignite. Once a person purchases an ISP, he becomes an Independent Associate (IA).

Torres and Robison purchased ISPs and became IAs. In doing so, they signed an agreement with Ignite. The agreement was comprised of three parts: a Compensation Plan, the Policies and Procedures, and the Terms and Conditions. The Policies and Procedures contained the following arbitration clause:

> IAs agree that any claim, dispute or other difference between IAs and Ignite or among IAs and Ignite will be exclusively resolved by binding arbitration . . . with arbitration to occur at Dallas, Texas.

Torres and Robison sued Chris Domhoff; Rob Snyder; Pierre Koshakji; Douglas Witt; Steve Flores; Michael Tacker; Donny Anderson; Trey Dyer; Steve Fisher; Randy Hedge; Brian Lucia; Logan Stout; Presley Swagerty; S.G.E. Management, LLC; Stream Gas & Electric, Ltd.; Stream SPE GP, LLC; Stream SPE, Ltd.; and Ignite Holdings, Ltd. (collectively, the defendants), alleging that the defendants' marketing program was an illegal pyramid scheme in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* The defendants moved to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3). Specifically, they contended that

venue in federal district court was improper because Torres and Robison had agreed to arbitrate all disputes. The district court granted the motion and dismissed the case. Torres and Robison now appeal.

## II

We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(3) de novo.[1] We similarly review the enforceability of a forum-selection or arbitration clause de novo.[2]

## III

Torres and Robison argue that the arbitration clause in the agreement is illusory and thus unenforceable. The determination of whether an arbitration agreement is valid "is generally made on the basis of ordinary state-law principles that govern the formation of contracts."[3] The parties do not dispute that Texas law governs the enforceability of the arbitration clause here.

Under Texas law, a stand-alone arbitration agreement requires binding promises on both sides as consideration for the contract.[4] "But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."[5] Still, an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate.[6] Here, Torres and Robison assert that the arbitration clause is illusory because Ignite could amend the clause "in its sole discretion" and because the modification

---

[1] See *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).

[2] *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998).

[3] *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (internal quotation marks and citation omitted).

[4] *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

[5] *Id.*

[6] See *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230-31 (Tex. 2003).

would become immediately effective upon notice to the IAs or upon posting to Ignite's website.

### A

As a preliminary matter, the parties dispute whether Ignite was required to give the IAs 30 days' notice before any modifications to the arbitration clause went into effect. Torres and Robison concede in their reply brief that if Ignite is required to give them 30 days' notice of any amendments, then the arbitration clause is enforceable. Thus, we must consider whether 30 days' notice is required under the agreement. The interpretation of a contract is a matter of law reviewed de novo.[7]

Amendments or modifications to the agreement are discussed in both the Terms and Conditions and the Policies and Procedures, but the agreement states that "in the case of any conflict" between the Policies and Procedures and other parts of the agreement, "these Policies and Procedures will prevail." In the Terms and Conditions, Paragraph 1 states that Ignite may amend the Terms and Conditions and the Policies and Procedures at its "sole discretion." Paragraph 1 further states that "[n]otification of amendments shall be posted in Ignite's website" and that "[a]mendments shall become effective 30 days after publication." Paragraph 13 also discusses amendments to the agreement. It provides:

> Ignite reserves the right to modify its Policies and Procedures, Compensation Plan, and applicable program and renewal fees from time to time. Such modifications shall become a binding part of this Agreement. Publication of such changes in official Ignite materials, Ignite corporate Website or by other means as Ignite determines is appropriate shall be deemed notice to me. The continuation of my Ignite Independent Associate position or my acceptance of commissions or bonuses shall constitute my acceptance of any and all amendments.

---

[7] *EOG Res., Inc. v. Chesapeake Energy Corp.*, 605 F.3d 260, 264 (5th Cir. 2010).

In the Policies and Procedures, the agreement provides that:

> IAs understand and acknowledge that in order to maintain a viable marketing program and to comply with changes in federal, state or local laws or economic conditions, Ignite may modify existing Policies and Procedures and provide updated Policies and Procedures and rules and regulations for IAs from time to time, as well as modify its Compensation Plan, customer services and charges at its sole discretion. Such modifications to the Policies and Procedures, the rules and regulations, the Compensation Plan or any customer services, and all charges thereto, will, *upon notice* to the IA or by publication by Ignite in the Power Center, become a binding part of the Independent Associate Agreement. IAs accept publication of these Policies and Procedures in the Power Center as notice of such modifications and assume responsibility for periodically reviewing these Policies and Procedures in the Power Center for such modifications.[8]

Torres and Robison contend that these parts of the agreement conflict and that, as such, the 30-day notice provision in the Terms and Conditions is trumped by the Policies and Procedures, thereby leaving the agreement without a notice requirement for amendments.

We agree that these notice provisions conflict. While the Terms and Conditions provide that amendments are effective upon 30 days' notice, the Policies and Procedures provide that amendments "become a binding part" of the agreement "upon notice." They do not reference any time frame for notice, but rather, suggest that amendments become effective immediately. Accordingly, these provisions conflict, and the provision in the Policies and Procedures governs. Thus, any amendment to the agreement binds the IAs "upon notice."

## B

We must now determine whether the agreement to arbitrate is illusory. The Texas Supreme Court has considered whether an arbitration clause not

---

[8] R. at 314 (emphasis added). The Power Center is Ignite's password secured website that it uses to notify IAs of changes to the ISP agreement.

5

supported by consideration is illusory in three recent cases. In *In re Halliburton Co.*, the court held that an arbitration agreement between an employer and an at-will employee was not illusory, despite the company's right to modify or do away with the arbitration program.[9] The court reasoned that two clauses saved the arbitration provision from being illusory. For one, the agreement provided that any modification to the arbitration clause was not to apply retroactively to a dispute of which Halliburton had notice on the day of the amendment.[10] In addition, the agreement stated that if Halliburton terminated the arbitration program, "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination."[11] The court explained that, because of these two provisions, Halliburton could not "avoid its promise to arbitrate by amending the provision or terminating it altogether."[12] Accordingly, it held that the provision was not illusory.

In *J.M. Davidson, Inc. v. Webster*, the Texas Supreme Court indicated that an employer's right to unilaterally abolish or amend an arbitration clause without notice could render the arbitration clause in an employment agreement illusory.[13] There, the court considered an agreement to arbitrate contained in an employer's personnel policy.[14] The employer had "reserve[d] the right to unilaterally abolish or modify any personnel policy without prior notice."[15] The

---

[9] 80 S.W.3d 566, 569-70 (Tex. 2002).

[10] *Id.*

[11] *Id.* at 570.

[12] *Id.*

[13] 128 S.W.3d at 230-31.

[14] *Id.* at 228.

[15] *Id.* at 229.

6

No. 09-20778

court ruled that the contract was ambiguous since it was unclear whether the right to unilaterally abolish personnel policies applied to the arbitration clause.[16] In doing so, the court noted "that most courts that have considered this issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory."[17] This circuit has since explained that in *Davidson*, "the court plainly held that *if* the defendant-employer retained the right to 'unilaterally abolish or modify' the arbitration program, *then* the agreement to arbitrate was illusory and not binding on the plaintiff-employee."[18]

Lastly, in *In re AdvancePCS Health L.P.*, the Texas Supreme Court considered the validity of an arbitration clause contained in a provider agreement between a pharmacy benefits management company and member pharmacies.[19] AdvancePCS Health (PCS) could modify the arbitration clause upon 30 days' notice to a member pharmacy, and it could terminate the agreement immediately if the member pharmacy failed to perform or breached a provision in the contract.[20] The court found that PCS's ability to modify the clause did not render it illusory, since it "provides a 30-day window during which the arbitration clause cannot be cancelled."[21] The court also determined that PCS's ability to terminate the clause upon breach did not make the clause illusory, since the contract provided that "any obligations that arise prior to the termination of the Agreement shall survive such termination."[22] The court

---

[16] *Id.* at 230-31.

[17] *Id.* at 231 n.2.

[18] *Morrison v. Amway Corp.*, 517 F.3d at 255 (emphasis in original).

[19] 172 S.W.3d at 605.

[20] *Id.* at 607.

[21] *Id.*

[22] *Id.*

explained that because of this provision, "[h]ad the pharmacies invoked arbitration rather than filing suit, PCS could not have avoided arbitration by terminating the Provider Agreement."[23]

In addition, this circuit recently considered the validity of an arbitration clause under Texas law in *Morrison v. Amway Corp.*[24] There, we held that an arbitration clause was illusory in light of *Davidson*. The clause at issue was in a distributorship contract, and Amway had the right to modify it unilaterally, as long as it published notice.[25] In holding the arbitration agreement illusory, we explained that the documents did not preclude elimination of the arbitration program and that the agreement contained "no *Halliburton* type savings clauses which preclude application of such amendments to disputes which arose (or of which Amway had notice) before the amendment."[26]

In sum, these cases make clear that even if an arbitration clause may be unilaterally modified, if the modification or elimination of the clause does not apply retroactively so as to allow the avoidance of arbitration, the promise to arbitrate is not illusory. Conversely, the cases do not precisely state when an arbitration agreement is illusory. However, they suggest that the lack of a notice window before any elimination of the clause becomes effective and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate are factors indicating that the agreement may be illusory.

Here, the arbitration clause may be eliminated or modified "upon notice," and the agreement contains no clause preventing a modification from applying to disputes arising before the modification. The circumstances are similar to

---

[23] *Id.* at 607-08.

[24] 517 F.3d 248 (5th Cir. 2008).

[25] *Id.* at 254.

[26] *Id.* at 257.

those in *Morrison*. As in *Morrison*, "[t]here is nothing in any of the relevant documents which precludes amendment to the arbitration program . . . from eliminating the entire arbitration program or its applicability to certain claims or disputes."[27] And like *Morrison*, "[t]here are no *Halliburton* type savings clauses which preclude application of such amendments to disputes which arose . . . before the amendment."[28] Ignite essentially could renege on its promise to arbitrate by merely posting an amendment to the agreement on its website.

The defendants contend that *Morrison* is distinguishable because the agreement here provides for notice of amendments and states that IAs may accept any amendments by continuing their business with Ignite and accepting bonuses or commissions. We do not find this argument persuasive. As noted previously, Ignite's Policies and Procedures govern and provide that amendments are binding and effective immediately, "upon notice." This is similar to the agreement in *Morrison*, in which amendments became effective upon "published notice."[29] Consequently, because amendments become binding "upon notice," the provision allowing IAs to accept modifications by continuing their business with Ignite is effectively meaningless. The IAs would have no opportunity to reject the modification and invoke their right to arbitration before any elimination of the program became effective.

In sum, Ignite's promise to arbitrate under the terms of this agreement was hollow. Accordingly, we hold that the arbitration provision is illusory and unenforceable.

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 254.

No. 09-20778

\*       \*       \*

For the foregoing reasons, we REVERSE the district court's order dismissing the case for improper venue and REMAND the case for further proceedings not inconsistent herewith.

No. 09-20778

\*       \*       \*

For the foregoing reasons, we REVERSE the district court's order dismissing the case for improper venue and REMAND the case for further proceedings not inconsistent herewith.