**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JUAN RAMON TORRES and EUGENE ROBISON,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:09CV2056** |
| **SGE MANAGEMENT, LLC; STREAM GAS & ELECTRIC, LTD; STREAM SPE GP, LLC; STREAM SPE, LTD; IGNITE HOLDINGS, LTD. ; CHRIS DOMHOFF; ROB SNYDER; PIERRE KOSHAKJI; DOUGLAS WITT; STEVE FLORES; MICHAEL TACKER; DONNY ANDERSON; TREY DYER; STEVE FISHER; RANDY HEDGE; BRIAN LUCIA; LOGAN STOUT; AND PRESLEY SWAGERTY,** | § § § § § § § § § § § § § | |
| **Defendants.** | § | |

<u>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

SGE Management, LLC, Stream Gas & Electric, Ltd., Stream SPE GP, LLC,

Stream SPE, Ltd., Ignite Holdings, Ltd., Chris Domhoff, Rob Snyder, Pierre Koshakji,

Douglas Witt, Steve Flores, Michael Tacker, Donny Anderson, Trey Dyer, Steve Fisher,

Randy Hedge, Brian Lucia, Logan Stout and Presley Swagerty (collectively the

"Defendants") file this Motion for Protective Order and for Sanctions against Plaintiffs'

attorneys of record pursuant to the Court's inherent power, Local Rules, and Federal

Rules of Civil Procedure 26(c) and 83(b).

# I.    TABLE OF CONTENTS

I.      TABLE OF CONTENTS ..................................................................................... ii

II.     TABLE OF AUTHORITIES .............................................................................. iii

III.    ISSUES PRESENTED ....................................................................................... 1

IV.     SUMMARY OF THE ARGUMENT ................................................................. 1

V.      BACKGROUND ............................................................................................... 2

     A.      History Of Plaintiffs' Counsels' Misconduct In This Litigation ............... 2

          1.      Noticing Depositions Without Prior Conference With Opposing Counsel ........................................................................... 3

          2.      Harassing Use Of Written Discovery ............................................ 3

          3.      Unprofessional Conduct During Conferences ................................ 6

          4.      Production Of Documents On The Eve Of Depositions, Contrary To Plaintiffs' Own Discovery Responses ....................... 7

          5.      Issuing Subpoenas To Third Parties Without Notice ..................... 8

          6.      Threat To Subpoena Counsel Of Record In This Case For A Deposition ..................................................................................... 8

     B.      Witness Intimidation ................................................................................ 9

VI.     ARGUMENT AND AUTHORITIES ............................................................... 10

     A.      Protective Order ...................................................................................... 10

     B.      Sanctions ................................................................................................ 13

VII.    CONCLUSION ................................................................................................. 16

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

## II.    TABLE OF AUTHORITIES

**Cases**

*Ben David v. Travisono,*
    495 F.2d 562 (1st Cir. 1974) ............................................................................. 10

*Carroll v. Jaques,*
    926 F. Supp. 1282 (E.D. Tex. 1996) ................................................................. 14

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ..................................................................................... 13, 14

*Disability Rights N.J., Inc. v. Velez,*
    No. 10-3950, 2011 U.S. Dist. LEXIS 78333 (D.N.J. July 19, 2011) ................... 10

*Dondi Properties Corp. v. Commerce Savings and Loan Ass'n,*
    121 F.R.D. 284 (N.D. Tex. 1988) .............................................................. 3, 11, 13

*In re Dellinger,*
    461 F.2d 389 (7th Cir. 1972) ............................................................................. 6

*In re First City Bancorporation of Tex.,*
    270 B.R. 807 (N.D. Tex. 2001) ......................................................................... 14

*In re Stomberg,*
    2013 Bankr. LEXIS 99, at *96, n.39 (Bankr. S.D. Tex. Jan. 10, 2013) ......... 11, 13

*Lelsz v. Kavanagh,*
    137 F.R.D. 646 (N.D. Tex. 1991) ..................................................................... 12

*Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.,*
    No. 11-10791, 2011 U.S. Dist. LEXIS 121426 (D. Mass. Oct. 20, 2011) ........... 10

**Statutes**

18 U.S.C. §1512(b) ...................................................................................... 10, 12

Tex. Disc. R. Prof'l Conduct 4.04(b) ............................................................. 10, 12

Tex. Penal Code § 36.05 ............................................................................... 10, 12

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

**Rules**

Fed. R. Civ. P. 45(b)(1)........................................................................................ 7

Fed. R. Civ. P. 26(c) ........................................................................................ 10

Fed. R. Civ. P. 83(b) ............................................................................. 11, 13, 15

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

iv

### III.    ISSUES PRESENTED

1.      Should this Court enter a protective order stating that Plaintiffs' counsel shall make no further mention to any potential witness of criminal charges that might arise from testimony in this case and that Plaintiffs' counsel shall not to make any further contact with Defendants' potential expert witnesses except through formal discovery as a result of Plaintiffs' counsel's threat to a potential expert witness of felony charges if that witness testifies against the Plaintiffs in this matter?

2.      Should this Court sanction Plaintiffs' counsel for his threat to a potential witness of felony charges if that witness testifies against the Plaintiffs in this matter, including an oral and written admonition and warning regarding the conduct of Plaintiffs' counsel and an order that Defendants file a statement of expenses that Defendants believe they reasonably incurred as a result of filing this motion and requiring Plaintiffs to pay such expenses.

### IV.    SUMMARY OF THE ARGUMENT

Throughout this litigation, Plaintiffs' counsel has routinely violated this Court's Guidelines for Professional Conduct by: unilaterally noticing depositions on short notice without conference; serving more than 10,000 written discovery requests, including 2,845 requests for production served with only a little more than two months left in the original fact discovery period; treating Defense Counsel with a lack of courtesy, cooperation, and respect; ambushing Defendants with the production of audio and video recordings of Defendants during depositions of the Defendants when those documents had been in Plaintiffs' possession for more than a year; issuing and serving subpoenas on third parties

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

without providing proper notice to Defendants; and threatening an imminent subpoena of litigation counsel in this case.

Recently, Plaintiffs' counsels' misconduct has intensified, requiring judicial intervention. Specifically, Plaintiffs' counsel has threatened a fact witness that testifying against the Plaintiffs could result in a felony prosecution, a desperate and impulsive attempt to intimidate that cannot go unanswered. Witness intimidation through threats of potential criminal charges if a witness testifies against the threatening party is prohibited under both federal and state law and by the rules governing professional conduct by attorneys that practice before this Court. A protective order and sanctions are necessary to remedy the misconduct of Plaintiffs' counsel and to prevent further abuses. Despite the best efforts of Defendants to avoid the expense of judicial resources on the misconduct of Plaintiffs' counsel, judicial intervention is now necessary to protect the integrity of the judicial process.

## V.     BACKGROUND

### A.     History Of Plaintiffs' Counsels' Misconduct In This Litigation

Plaintiffs' Counsels' abuse of the litigation process did not begin with his threats of criminal penalties against fact witnesses who will testify against the Plaintiffs. Throughout Plaintiffs' lawsuit, and with increasing frequency, Plaintiffs' Counsel continuously violates the Court's Guidelines for Professional Conduct.  Plaintiffs' Counsels' bad faith conduct is causing (1) litigation costs to increase, (2) increased burden on Defendants to spend time researching and discussing frivolous legal issues unrelated to the substance of this lawsuit, and (3) impediment to the efficient resolution of Plaintiffs' lawsuit.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

### 1.   Noticing Depositions Without Prior Conference With Opposing Counsel

Mandate from the Court of Appeals was transmitted to the Court on March 23, 2011, effectively reinstating this case. Though Plaintiffs' counsel was notified of the mandate at that time, Plaintiffs did not initiate fact discovery. The Court entered a scheduling order on October 27, 2011, under which discovery closed on August 31, 2012. Again, Plaintiff did not initiate fact discovery.

Then, on January 12, 2012, without warning, Plaintiffs' counsel unilaterally noticed the depositions of four individual defendants and one executive of Stream for dates and places that had not been discussed nor agreed upon.[1] Counsel for Defendants responded with shock that Plaintiffs' counsel would act with such a lack of courtesy and professionalism, and forwarded a copy of *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988), which was incorporated into the Guidelines for Professional Conduct of this Court in General Order No. 2001-7 (S.D. Tex. 2001).[2] After requiring Defendants to go through the fire drill of scheduling and preparing all five witnesses, Plaintiffs' counsel ultimately decided only to take two of those depositions,[3] and then continued to sit on the case without taking any written discovery for several months.[4]

### 2.   Harassing Use Of Written Discovery

In April of 2012, more than a year after notice that mandate from the Court of Appeals was transmitted to this Court on March 23, 2011, Plaintiffs served *more than*

---

[1] Ex. A, Hurst Aff. ¶ 3; Ex. A(2), January 12, 2012 Deposition Notice.
[2] Ex. A. Hurst Aff. ¶ 3; Ex. A(1), January 13, 2012 Email.
[3] Ex. A, Hurst Aff. ¶ 4; Ex. A(3), February 1, 2012 Deposition Notice.
[4] Ex. A, Hurst Aff. ¶ 4.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

*1,000 interrogatories and almost 7,000 requests for admission.*[5] But still Plaintiffs made no requests for production of documents.[6]

Then, in June and July of 2012, almost fifteen months after mandate was issued by the Court of Appeals, and almost eight months after this Court entered a scheduling order closing fact discovery on August 31, 2012, Mr. Clearman served *2,845 requests for production* on behalf of Plaintiffs.[7] There was only a little more than two months remaining in fact discovery when Plaintiffs served the first of their 2,845 requests for production, and there was less than two months remaining when the last of Plaintiffs' requests for production were served.[8]

The written discovery sought by Plaintiffs' counsel within the final months of fact discovery is several thousand pages long.  Below is a picture of the requests and the written responses to *some* but not all of the Plaintiffs' requests, which when stacked together, total more than three feet tall:[9]

---

[5] Ex. A, Hurst Aff. ¶5.  For reasons that will be obvious, Defendants have chosen not to burden the Court by filing actual copies of the voluminous discovery served by Plaintiffs.
[6] Ex. A, Hurst Aff. ¶ 5.
[7] Ex. A, Hurst Aff. ¶ 6.
[8] *See* Order Following Telephone Scheduling Conference Held on October 27, 2011 [Dkt. 62] ("Discovery to be completed by: August 31, 2012").
[9] Ex. A, Hurst Aff. ¶ 7; Ex. A(4), Photograph.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**



Incredibly, this photograph does not include *any* of the document productions by the Defendants, just the written requests themselves and Defendants' written responses.[10]

Plaintiffs served requests for production with full knowledge that the requested documents could not be produced by the close of discovery, which was little more than two months away. Plaintiffs' counsel's fifteen-month delay after the issuance of mandate by the Court of Appeals before serving requests for production made it certain that fact discovery would need to be extended. Plaintiffs did not make any good faith effort to comply with the Court's original scheduling order in this case. The number and timing of the discovery requests were an abuse of the discovery process.

---

[10] Ex. A, Hurst Aff. ¶ 7.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Nonetheless, Defendants diligently responded, reviewing more than 1.9 million documents in response to the Plaintiffs 2,845 Requests for Production, resulting in the production of more than 600,000 pages of documents and countless hours of audio and video.[11] In retrospect, Defendants should have brought the abusive discovery tactics of Plaintiffs' counsel to the Court's attention and sought protection, because Defendants' efforts to respond apparently emboldened Plaintiffs' counsel to become even more abusive and unprofessional.

### 3. Unprofessional Conduct During Conferences

A major contributing issue to the pace of discovery after Plaintiffs finally served requests has been a pattern of unprofessional conduct by Mr. Clearman during attempts to confer. On more than one occasion during attempts to meet and confer regarding discovery issues, Mr. Clearman yelled at counsel for the Defendants, made baseless accusations of misconduct and more generally acted without professionalism or courtesy.[12] Defendants' counsel has been forced to end more than one conference call rather than suffer further abusive language from Mr. Clearman, which Mr. Clearman tacitly admits by comparing his conduct favorably to the notoriously improper behavior of defense counsel during the trial of the Chicago Seven.[13]

Plaintiffs' counsel has also made bizarre and unfounded accusations that Defense counsel or the Defendants themselves have altered documents before production,

---

[11] Ex. A, Hurst Aff. ¶ 8.

[12] Ex. A, Hurst Aff. ¶ 9.

[13] Ex. A, Hurst Aff. ¶ 9; Ex. A(5), Clearman March 23, 2013 Email.  In fact, while William Kunstler, counsel for the Chicago Seven, had his first conviction for contempt reversed because the Seventh Circuit concluded that the original trial judge should not have presided over the contempt trial, *In re Dellinger*, 461 F.2d 389 (7th Cir. 1972), Mr. Kunstler was tried on remand by a different judge and convicted a second time for his behavior during trial.  *In re Dellinger*, 370 F. Supp. 1304, 1319-20 (1973) ("His conduct exceeded the 'outermost limits' of vigorous advocacy and constituted contemptuous misbehavior which he assuredly knew or reasonably should have been aware was wrongful.").

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

including allegations of the removal of metadata from electronically stored information produced in native format.[14] Defendants did not "remove all metadata from native files." Native files (e.g. word, excel, etc.) were produced to Plaintiffs exactly as they were collected, and they contain whatever metadata existed as they were maintained in the normal course of business by the Defendants.[15] Plaintiffs' counsel's grievance against Defendants' counsel was simply contrived.

### 4.  Production Of Documents On The Eve Of Depositions, Contrary To Plaintiffs' Own Discovery Responses

In response to Defendants' request for production, after receiving more than one extension, Plaintiffs promised in response to several requests for production "what they believe to be all non-privileged and non-attorney work product documents in their possession that pertain to Stream or Ignite."[16] This response was served on February 4, 2013 with a relatively insignificant production of documents from one of the Plaintiffs and no documents from the other Plaintiff.[17] Plaintiffs' counsel did not suggest at any point that any documents would be produced in the future.

Then, on the eve of depositions of several of the Defendants, and again twice in between the depositions of several of the Defendants, Plaintiffs produced hundreds of additional documents pertaining to Stream or Ignite that counsel for Plaintiffs had held, in some instances, for more than a year before producing the same.[18] Most of the documents

---

[14] Ex. A, Hurst Aff. ¶ 18; Ex. A(16).
[15] Ex. A, Hurst Aff. ¶ 18; Ex. A(17).
[16] Ex. A, Hurst Aff. ¶10; Ex. A(6), Plaintiffs' Response to Defendants' First Requests for Production.
[17] Ex. A, Hurst Aff. ¶ 10.
[18] Ex. A, Hurst Aff. ¶ 11; Ex. A(7), March 24, 2013 Email; Ex. A(8), March 27, 2013 Email; Ex. A(9), Screen Capture from Dropbox account.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

were audio and video files that could not be reviewed in advance of the depositions.[19] The production appears to have been tactically delayed so as to ambush the Defendants at their own depositions.

### 5. Issuing Subpoenas To Third Parties Without Notice

Plaintiffs have cast wide nets to drag third parties into this litigation by issuing third-party subpoenas demanding the production of irrelevant information. In one instance, Plaintiffs issued and served such a subpoena on Credit Suisse without providing advance notice to Defendants in violation of Federal Rule of Civil Procedure 45(b)(1).[20] In other instances, Plaintiffs provided notice that it would subpoena certain parties but provided no notice of what it would seek by way of the subpoena, and then only served copies of subpoenas well after the third-parties were already served.[21]

### 6. Threat To Subpoena Counsel Of Record In This Case For A Deposition

Following a letter notifying Plaintiffs of the inadvertent production of a small number of privileged documents – as may reasonably be expected in a case involving the review of nearly two million documents – Plaintiffs' counsel responded with an unfounded demand for the deposition of Defendants' counsel of record in this case, stating "[i]f you cannot agree, we will subpoena Mr. John Franklin Guild to appear at a deposition to determine the merits of the statements in his letter."[22]

---

[19] *See* Ex. A(9), Screen Capture from Dropbox account..
[20] Ex. A, Hurst Aff. ¶ 12; Ex. A(10), Denise Ward March 15, 2013 Email.
[21] Ex. A, Hurst Aff. ¶ 12.
[22] Ex. A, Hurst Aff. ¶ 13; Ex. A(11), Clearman March 20, 2013 Letter.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

**B.      Witness Intimidation**

Regrettably, Plaintiffs' counsels' inappropriate conduct recently reached a point beyond which the Defendants could not allow it to go further without judicial intervention. On March 19, 2013, the Defendants sent notice that a man named Paul Carmona had signed the court's Protective Order, allowing him to review confidential information produced in the litigation.[23] Mr. Carmona was chief of the Consumer Protection Division of the Texas Attorney General's office when that division reviewed business operations of the corporate Defendants and determined not to pursue any formal investigation or other legal action against them. The same day that he received notice that Mr. Carmona had signed the protective order, Mr. Clearman sent an email stating, "I suggest that Paul review the revolving door provisions of the Texas laws.  It is possible that he might be committing a felony by testifying. . . .  Obviously, once Paul is sworn in, I must do all I can to protect my clients."[24] He also demanded that Mr. Carmona be deposed on less than two week's notice stating, "I will notice and serve him for such a deposition."[25]

Less than 10 minutes later, in a transparent attempt to protect himself by purporting to disclaim an intent to bring criminal action against Mr. Carmona, while actually bolstering the underlying threat itself, Mr. Clearman sent a second email stating, "Actually, I guess it would be best to notice the depositions in Austin. But please, take my concerns seriously.  *This is not bluff or bluster*.  Just let Paul or any one in his shoes know what we believe to be the case. . . .  In any case, my clients will not file a criminal

---

[23] Ex. A, Hurst Aff. ¶ 14; Ex. A(12), Hurst March 19, 2013 Letter.
[24] Ex. A(13), Clearman March 19, 2013 Email.
[25] *Id.*

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

complaint against Paul or any other witness (absent some strange events), although any useful facts will be used for impeachment."[26]

The next day, unsatisfied with having indirectly threatened Mr. Carmona that he "might be committing a felony by testifying," and having indicated that such threat was not "bluff or bluster," Mr. Clearman took the additional affirmative step of *adding Mr. Carmona, a third party, to email correspondence to counsel for Defendants relating to his threats*.[27] In the same email, in an effort to exert influence over Mr. Carmona privately, Mr. Clearman urged Mr. Carmona to contact him directly to further discuss the matter.

As a direct result of Mr. Clearman's conduct, Mr. Carmona is now understandably reluctant to involve himself in this case given Mr. Clearman's demonstrated history of impulsive and abusive conduct. He has stated to defense counsel that he is sympathetic to the Defendants and was willing to cooperate with them, but that Mr. Clearman's threats raise too much heat and make it not worth the headache of becoming involved.[28] Defendants anticipate that without Mr. Clearman's intimidation, Mr. Carmona would have provided testimony substantially benefiting the Defendants' theory of the case.

## VI. ARGUMENT AND AUTHORITIES

### A. Protective Order

Witness intimidation through threats of potential criminal charges if a witness testifies against the threatening party is prohibited under both federal and state law and by

---

[26] Ex. A(14), Clearman March 19, 2013 Email (emphasis added).
[27] Ex. A(15), Clearman March 20, 2013 Email.
[28] Ex. A, Hurst Aff. ¶ 17.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

the rules governing professional conduct by attorneys that practice before this Court. *See, e.g.,* 18 U.S.C. §1512(b)[29]; TEX. PENAL CODE § 36.05[30]; TEX. DISC. R. PROF'L CONDUCT 4.04(b). This Court may issue a protective order "for good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Such power extends to the use of protective orders to prevent interference with potential witnesses. *See Ben David v. Travisono*, 495 F.2d 562, 564 (1st Cir. 1974) (protective order prohibiting witness intimidation appropriate upon a finding "that the plaintiffs reasonably fear retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order."); *Disability Rights N.J., Inc. v. Velez*, No. 10-3950, 2011 U.S. Dist. LEXIS 78333 (D.N.J. July 19, 2011) ("protective orders are also an appropriate vehicle to prevent interference with potential witnesses"); *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.*, No. 11-10791, 2011 U.S. Dist. LEXIS 121426 (D. Mass. Oct. 20, 2011) (same).

Moreover, this Court may regulate practice in any manner consistent with this Court's local rules. *See* FED. R. CIV. P. 83(b). This Court's local rules include Guidelines for Professional Conduct, which explains attorneys' "fundamental duties of professional responsibility to their clients, the judiciary, opposing counsel, and the administration of justice." *In re Stomberg*, 2013 Bankr. LEXIS 99, at *96, n.39 (Bankr. S.D. Tex. Jan. 10,

---

[29] 18 U.S.C. §1512(b) states, in relevant part: "Whoever knowingly uses intimidation, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to … influence, delay or prevent the testimony of any person in an official proceeding [or] cause or induce any person to …withhold testimony … from an official proceeding … shall be fined under this title or imprisoned not more than 20 years, or both."

[30] Section 36.05 of the Texas Penal Code states, in relevant part: "A person commits an offense if, with intent to influence the witness, he. . . coerces a witness or prospective witness in an official proceeding: . . . (2) to withhold any testimony, information, document or thing; . . . (4) to absent himself from an official proceeding to which he has been legally summoned; . . . ."

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

2013) ("In 2007, the District Judges of the Southern District of Texas voted to adopt these Guidelines for Professional Conduct, to be observed by all attorneys appearing before any district judge, bankruptcy judge, or magistrate judge presiding in the Southern District of Texas. General Order 2001-7. The guidelines are derived from the decision rendered in *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988).").

A protective order is appropriate in this case because a third party witness, Mr. Carmona, reasonably fears retaliation from Plaintiffs' counsel and the court's fact-finding may be materially impaired unless the Court provides the tangible protection of a suitable protective order. Mr. Clearman has threatened the following:

> *It is possible that [Carmona] might be committing a felony by testifying.* You may disagree, but respect the fact that I have been involved in that issue that is was not pretty. I don't want to put my friend in that issue unless you are comfortable with this issue. Obviously, *once Paul is sworn in, I must do all I can to protect my clients.*"[31]

Defendants disagree in the first instance that any felony would be implicated by Mr. Carmona testifying in this case. But, regardless of whether criminal action may or may not be warranted in a particular case, the fact remains that directly or indirectly coercing or intimidating a witness by instilling fear of criminal proceedings is itself criminal conduct.

This is precisely what Mr. Clearman has done. As set forth in the fact section above, Plaintiffs' counsel aggressively made clear his position that Mr. Carmona will commit a felony by testifying truthfully in a manner that will assuredly damage the Plaintiffs' case, Mr. Clearman stated that such threats are not "bluff or bluster," indicated

---

[31] Ex. A(13), Clearman March 19, 2013 Email (emphasis added).

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

he had personally been involved in a similar situation before and that it was "not pretty," and stated that if the Plaintiffs determine that "strange events" have occurred, Mr. Clearman or his clients might pursue criminal charges.  Mr. Clearman then took the unbelievable step of emailing Mr. Carmona to make sure his threats were directly communicated, therein demonstrating his intent to ensure the coercive effect of his communications. Such interference with, coercion and intimidation of a potential witness is improper and unlawful. *See* 18 U.S.C. §1512(b); TEX. PENAL CODE § 36.05; TEX. DISC. R. PROF'L CONDUCT 4.04(b).

Moreover, Mr. Clearman's intimidation and coercion succeeded: Mr. Carmona has expressed no further willingness to materially assist the Defendants with their case and has essentially gone silent since the time of Mr. Clearman's conduct. This is precisely the result sought by Mr. Clearman and precisely the result sought to avoided by the laws and rules of professional conduct cited immediately above.

Defendants request that the Court issue a protective order directing counsel for the Plaintiffs to cease any threats or intimidation of potential witnesses in this case by ordering counsel for the Plaintiffs to make no mention to any potential witness of criminal charges that might arise from testimony in this case.

**B.     Sanctions**

District courts are "obliged to act against improper conduct occurring in any proceeding before it." *Lelsz v. Kavanagh*, 137 F.R.D. 646, 653 (N.D. Tex. 1991) (citing *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*, 121 F.R.D. 284, 286-87 (N.D. Tex. 1988)). "Authority clearly supports the right of a trial judge to regulate the conduct of attorneys during the course of a case." *Id.; see In re Stomberg*, 2013 Bankr.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

13

LEXIS 99, at *96 (Bankr. S.D. Tex. Jan. 10, 2013). Sanctions may rest against a litigant and its attorneys under this Court's inherent power, local rules, and federal rules. *See* FED. R. CIV. P. 83(b); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) (federal courts have inherent power to regulate practice in pending cases).

This Court may regulate practice in any manner consistent with this Court's local rules. *See* FED. R. CIV. P. 83(b). This Court's Guidelines for Professional Conduct explains that attorneys have "fundamental duties of professional responsibility to their clients, the judiciary, opposing counsel, and the administration of justice." *In re Stomberg*, 2013 Bankr. LEXIS at *96, n.39.[32] Plaintiff's counsel Scott Clearman routinely violates the Court's guidelines with increasing frequency. Accordingly, Defendants request the Court sanction Mr. Clearman and thus facilitate litigation in accord with the Court's guidelines.

As discussed in detail above, Plaintiffs' counsel has improperly threatened third parties, warranting the imposition of sanctions. Not only do such threats violate federal and state law, but they also violate several additional provisions governing the conduct of lawyers practicing before this court, including:

> S.D. Tex. Prof'l Conduct Guideline D. A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

> S.D. Tex. Prof'l Conduct Guideline F. . . . A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.

---

[32] *In re Stomberg*, 2013 Bankr. LEXIS 99, at *96, n.39 (Bankr. S.D. Tex. Jan. 10, 2013) ("In 2007, the District Judges of the Southern District of Texas voted to adopt these Guidelines for Professional Conduct, to be observed by all attorneys appearing before any district judge, bankruptcy judge, or magistrate judge presiding in the Southern District of Texas. General Order 2001-7. The guidelines are derived from the decision rendered in *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988).")

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Tex. Disc. R. Prof'l Conduct 4.04(a). . . . a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

Tex. Disc. R. Prof'l Conduct 4.04(b). A lawyer shall not present, participate in presenting, or threaten to present: (1) criminal or disciplinary charges solely to gain an advantage in a civil matter; or (2) civil, criminal or disciplinary charges against a complainant, a witness, or a potential witness in a bar disciplinary proceeding solely to prevent participation by the complainant, witness or potential witness therein.

Violating the Texas Disciplinary Rules of Professional Conduct is grounds for disciplinary action, but the Court is not limited by that code. S.D. Tex. Rule of Discipline 1.B (Standard of Conduct). Also, attorneys may be sanctioned for discourteous and uncivil conduct that violates the principles of this Court's Guidelines for Professional Conduct. *See In re First City Bancorporation of Tex.,* 270 B.R. 807, 810 (N.D. Tex. 2001) (court ordered monetary sanctions and barred attorney from appearance in court for his *Dondi* violations).

Further, sanctions pursuant to the Court's inherent authority serve the "dual purpose of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Carroll v. Jaques*, 926 F. Supp. 1282, 1288-1289 (E.D. Tex. 1996) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)). "As long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.*

Interference and intimidation of a potential witness is improper and should result in sanctions. Mr. Carmona, in his capacity as chief of the Consumer Protection Division of the Texas Attorney General's office, had indicated a willingness to testify for the

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Defendants regarding the facts surrounding the Texas Attorney General's review of Defendants' business practices.[33] Mr. Carmona was also a potential rebuttal expert witness.[34] Through his acts of witness intimidation and coercion, Mr. Clearman has deprived Defendants of the ongoing cooperation of a fact witness, which appears to have been precisely what Mr. Clearman intended by making his threats. Thus, Defendants are entitled to the sanction of an adverse inference instruction that Mr. Carmona's testimony would have favored the Defendants were it not for Mr. Clearman's misconduct.

Defendants engaged Mr. Clearman through various methods and attempted to resolve this dispute without judicial involvement. Because no progress was made, Defendants assert that sanctions are warranted.

## VII.   CONCLUSION

WHEREFORE, Defendants SGE Management, LLC, Stream Gas & Electric, Ltd., Stream SPE GP, LLC, Stream SPE, Ltd., Ignite Holdings, Ltd., Chris Domhoff, Rob Snyder, Pierre Koshakji, Douglas Witt, Steve Flores, Michael Tacker, Donny Anderson, Trey Dyer, Steve Fisher, Randy Hedge, Brian Lucia, Logan Stout and Presley Swagerty respectfully pray that, after a hearing on Defendants' Motion for Protective Order and for Sanctions, a protective order against Plaintiffs' attorney pursuant to the Court's inherent power, Local Rules, and Federal Rule of Civil Procedure 83(b), and that the Court:

(1)     issue an oral and written admonition and warning regarding the conduct of Plaintiffs' counsel;

(2)     order Plaintiffs' counsel to make no further mention to any potential witness of criminal charges that might arise from testimony in this case;

---

[33] Ex. A, Hurst Aff. ¶ 17.
[34] Ex. A, Hurst Aff. ¶ 17.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

(3)     order Plaintiffs' counsel not to make any further contact with Defendants' potential expert witnesses except through formal discovery;

(4)     order Defendants to file a statement of expenses that Defendants believe they reasonably incurred as a result of filing this motion within ten (10) days of entry of an Order on Sanctions and require Plaintiffs to pay such expenses;

(5)     order that Defendants are entitled to an adverse inference instruction that Mr. Carmona's testimony would have favored the Defendants were it not for the misconduct of Plaintiffs' counsel; and

(6)     grant to Defendants any and other and further relief, both at law and in equity, to which they shows themselves entitled.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Respectfully submitted,


**GRUBER HURST JOHANSEN HAIL SHANK, LLP**

By: s/ Michael K. Hurst
     MICHAEL K. HURST, Lead Counsel
      State Bar No. 10316310
      mhurst@ghjhlaw.com
     JOHN FRANKLIN GUILD
      State Bar No. 24041022
      jguild@ghjhlaw.com

     1445 Ross Avenue, Suite 2500
     Dallas, TX 75202
     Telephone (214) 855-6800
     Fax (214) 855-6808

     VANESSA J. RUSH
     State Bar No. 24013434
     Southern District No. 684839

     STREAM ENERGY
     1950 Stemmons Freeway, Suite 3061
     Dallas, TX 75207
     Telephone (214) 800-4464
     Fax (214) 560-1354

     **CO-ATTORNEYS FOR DEFENDANTS**


**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1, I conferred with Mr. Scott Clearman. He is opposed to the above and foregoing motion and counsel cannot agree about the disposition of the motion.

s/ Michael K. Hurst
Michael K. Hurst

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been served upon all counsel for via the Court's electronic filing system on this 26th day of April, 2013.

s/ Michael K. Hurst
Michael K. Hurst

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**