**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JUAN RAMON TORRES and EUGENE ROBISON, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 4:09-cv-2056 |
| v. | ) ) | |
| SGE MANAGEMENT, LLC, et al., | ) ) | |
| Defendants. | ) | |

**D<span>EFENDANTS</span> SGE M<span>ANAGEMENT</span>, LCC'<span>S</span> M<span>OTION</span> T<span>O</span> S<span>TAY</span> C<span>LASS</span> N<span>OTICE</span>**

TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ........................................................................ 1

NATURE AND STAGE OF THE PROCEEDING .................................................. 4

ISSUE STATEMENT .............................................................................................. 5

ARGUMENT ........................................................................................................... 5

I.      Stream Energy's Rule 12(c) Motion Presents a Serious Legal Question on which Stream Energy is Likely to Prevail ............................................ 7

II.     The Equities Favor a Stay:  A Stay Will Forestall Irreparable Harm to Stream Energy, While Imposing No Burden on Plaintiffs or Putative Class Members ........................................................................................... 9

      A.     Absent a Stay, Stream Energy Will Suffer Irreparable Harm, as Will Innocent Third-Parties ................................................... 10

      B.     A Stay Will Not Prejudice Absentee Class Members—Indeed, Absentee Class Members Will Likely Be Harmed Absent a Stay ........... 13

      C.     A Stay Will Not Harm Plaintiffs ................................................ 15

      D.     A Stay Is in the Public Interest ................................................. 16

CONCLUSION ....................................................................................................... 17

TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
  625 F.3d 185 (5th Cir. 2010) ...............................................................3, 9

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
  189 F.3d 321 (3d Cir. 1999)...............................................................3, 9

*Beale v. EdgeMark Fin. Corp.*,
  1995 WL 631840 (N.D. Ill. Oct. 23, 1995)...............................................10

*Boutros v. JTC Painting & Decorating Corp.*,
  2013 WL 3110943 (S.D.N.Y. June 19, 2013) .......................................16

*Brown v. Wal-Mart Stores, Inc.*,
  2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ...........................12, 4, 15

*Cardoza v. Bloomin' Brands, Inc.*,
  No. 2:13-CV-01820, slip op. 2 (D. Nev. Dec. 19, 2014).....................17

*Cavin v. Home Loan Ctr. Inc.*,
  469 F. Supp. 2d 561 (N.D. Ill. 2007), *aff'd*, 531 F.3d 526 (7th Cir. 2008) ...........1, 6

*Coal. to Defend Affirmative Action v. Granholm*,
  473 F.3d 237 (6th Cir. 2006) ...............................................................17

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .................................................................8

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
  284 F. Supp. 2d 511 (S.D. Tex. 2003) ...................................................8

*Goodman v. Dell Pub. Co.*,
  1995 WL 368596 (E.D. La. June 20, 1995).............................................11

*Gray v. Golden Gate Nat'l Recreational Area*,
  2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) .......................................17

*Haas v. Pittsburg Nat. Bank*,
  381 F. Supp. 801 (W.D. Pa. 1984).......................................................11

*Hamilton v. Am. Corrective Counseling Sers., Inc.*,
  2007 WL 1395592 (N.D. Ind. May 10, 2007) ...................2, 5, 13, 15, 16

*Hilton v. Braunskill*,
  481 U.S. 770 (1987)..............................................................................2

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*,
  354 S.W.3d 887 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ..........................................11

*Jenkins v. Hyundai Motor Financing Co.*,
  2008 WL 2268319 (S.D. Ohio June 2, 2008) ..........................................................17

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974)..........................................................................11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)....................................................................................2

*Lindsey v. Sclumberger Tech. Corp.*,
  2017 WL 2999428 (W.D. Tex. Mar. 3, 2017) ..........................................................1

*Lionheart Co., Inc. v. PGS Onshore, Inc.*,
  2007 WL 1704906 (Tex. App.—Waco 2007 June 13, 2007, no pet.) ....................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  208 F.R.D. 1 (D.D.C. 2002)..........................................................................17

*Martinez v. MXI Corp*,
  2016 WL 951430 (D. Nev. Mar. 9, 2016) .............................................................9

*Marx v. Centran Corp.*,
  747 F.2d 1536 (6th Cir. 1984) ..............................................................3, 7, 9, 16

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................14

*Piambino v. Bailey*,
  610 F.2d 1306 (5th Cir. 1980) .......................................................................2, 8

*In re Polyurethane Foam Antitrust Litig.*,
  2014 WL 12591692 (N.D. Ohio May 16, 2014)..........................................................14

*Powell v. Tosh*,
  2012 WL 1202289 (W.D. Ky. April 10, 2012)..........................................................14

*R&D Bus. Sys. v. Xerox Corp.*,
  150 F.R.D. 87 (E.D. Tex. 1993)....................................................2, 5, 6, 9, 14, 17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  286 F.R.D. 88 (D.D.C. 2012).........................................................................5

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)...................................................................................11

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) .........................................................................6, 7, 9

*S.E.C. v. Koscot Interplanetary, Inc.*,
    497 F.2d 473 (5th Cir. 1974) ............................................................................2, 8

*S.G.E. Mgmt., L.L.C. v. Torres*,
    2017 WL 1650317 (U.S. Oct. 2, 2017)..................................................................5

*Sampson v. Murray*,
    415 U.S. 61 (1974).................................................................................................15

*Torres v. S.G.E. Mgmt., L.L.C.*,
    2014 WL 129793 (S.D. Tex. Jan. 13, 2014) ....................................................1, 4

*Torres v. S.G.E. Mgmt., L.L.C.*,
    838 F.3d 629 (5th Cir. 2016) (en banc) ...........................................1, 4, 5, 8, 13, 15

*Torres v. S.G.E. Mgmt., L.L.C.*,
    No. 14–20128 (5th Cir. Dec. 7, 2016) ..........................................................3, 5, 10

*Torres v. S.G.E. Mgmt., L.L.C.*,
    No. 14-20128 (5th Cir. Nov. 29, 2016)..............................................................1, 5

*Torres v. S.G.E. Mgmt., L.L.C.*,
    No. 14-90004 (5th Cir. Mar. 4, 2014).............................................................3, 10

*Torres v. SGE Mgmt. L.L.C*,
    805 F.3d 145 (5th Cir. 2015) ................................................................................4

*Torres v. SGE Mgmt. L.L.C*,
    815 F.3d 247 (5th Cir. 2016) ................................................................................4

*United States v. Baylor Univ. Med. Ctr.*,
    711 F.2d 38 (5th Cir. 1983) ..................................................................5, 6, 7, 9, 17

*In re Urethane Antitrust Litig.*,
    2006 WL 3021126 (D. Kan. Oct. 23, 2006) ....................................................3, 14

*Whitlock v. FSL Mgmt., LLC*,
    2012 WL 6675124 (W.D. Ky. Dec. 21, 2012)...................................................14

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wooten v. Hamilton Cty.*,
   94 F.R.D. 176 (S.D. Ohio 1982) ...................................................................7, 15, 16

**Statutes**

18 U.S.C. § 1964(c) ..............................................................................................3, 7, 8

**Other Authorities**

Federal Judicial Center, *Manual for Complex Litigation* § 21.28 (4th ed.) .............................3, 15

Private Securities Litigation Reform Act of 1995 (PSLRA) § 107, Pub. L No.
   104-67, 109 Stat. 737, 758 ...........................................................................7

**Rules**

Fed. R. App. P. 41 ......................................................................................................3

Fed. R. Civ. P. 23(c)(B)(ii) .........................................................................................1

Defendants SGE Management, LLC, *et al.* (collectively "Stream Energy") respectfully move for an emergency stay to delay issuance of class notice pending resolution of Stream Energy's Rule 12(c) Motion for Judgment on the Pleadings, which is being filed concurrently with this motion.  Plaintiffs oppose the requested relief.  A stay, extending only as long as the Court needs to resolve Stream Energy's 12(c) motion, is appropriate because Stream Energy's 12(c) motion is likely to dispose of this case, and the equities weigh heavily in favor of a stay because prematurely issuing class notice will do irreparable harm to Stream Energy, harm Plaintiffs and the absentee class members, and waste judicial resources.  At minimum, an administrative stay of the issuance of class notice is warranted until this Court has the opportunity to narrow the class definition to include only those Independent Associates who lost money.[1]

## SUMMARY OF THE ARGUMENT

Issuance of class notice—pursuant to this Court's February 21, 2014 order granting Plaintiffs' Motion for Approval of Summary Notice of Pendency of Class Action—should be stayed pending resolution of Stream Energy's Rule 12(c) motion.  This Court has both the discretion to determine when to issue class notice and the power to issue a stay.  *Lindsey v. Sclumberger Tech. Corp.*, 2017 WL 2999428, at *1 (W.D. Tex. Mar. 3, 2017) ("District courts have discretion to decide whether and how to issue notice for putative plaintiffs . . ."); *Cavin v.*

---

[1]      *Compare Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 632 (5th Cir. 2016) (en banc) ("The district court certified a class of plaintiffs (the 'Plaintiffs'), comprising *those who lost money* participating as Independent Associates ('IAs') in Ignite's program.") (emphasis added), *with Torres v. SGE Mgmt. LLC*, 2014 WL 129793, at *11 (S.D. Tex. Jan. 13, 2014) ("The class will consist of all IAs who joined Ignite on or after January 1, 2005, through April 2, 2011, excluding the IAs subject to the Eleventh Circuit opinion in *Betts*."). *See also Torres v. S.G.E. Mgmt., L.L.C.*, No. 14-20128 (5th Cir. Nov. 29, 2016) ("Our en banc opinion unequivocally states that the certified class comprises *only* 'those who lost money participating as Independent Associates ("IAs") in Ignite's programs.' . . . No one appears to dispute defendants-appellants insistence that the class is limited to those who lost money."). *Cf.* Fed. R. Civ. P. 23(c)(B)(ii) ("The notice must clearly and concisely state in plain, easily understood language . . . the definition of the class certified.").

1

*Home Loan Ctr. Inc.*, 469 F. Supp. 2d 561, 574 (N.D. Ill. 2007) ("Rule [23] affords the Court discretion to control the manner in which a class action proceeds, including the timing of the mailing of notice to the class."), *aff'd*, 531 F.3d 526 (7th Cir. 2008); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (stay power "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

"Whether to delay notice involves consideration of two factors:  1) the prejudice the delay will cause absentee class members and 2) the harm to the defendant."  *Hamilton v. Am. Corrective Counseling Sers., Inc.*, 2007 WL 1395592, at *1 (N.D. Ind. May 10, 2007); *see also R&D Bus. Sys. v. Xerox Corp.*, 150 F.R.D. 87, 91 (E.D. Tex. 1993) ("When early notice might adversely affect one party while a delay in notice would not prejudice any party, courts have repeatedly chosen to delay the issuance of class notice.").  A stay is warranted where (1) "the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "the applicant will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) "the public interest lies" in favor of a stay.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Stream Energy's stay motion readily satisfies each of these four factors.

There is a high likelihood that Stream Energy will prevail on the merits of its Rule 12(c) motion.  As that motion explains, the Fifth Circuit has repeatedly recognized that a "pyramid distribution scheme is a security."  *Piambino v. Bailey*, 610 F.2d 1306, 1316 (5th Cir. 1980); *see also S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 474 (5th Cir. 1974) (same).  That is fatal to Plaintiffs' complaint because—as the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute itself makes clear—"no person may rely upon any conduct that would have been

actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."  18 U.S.C. § 1964(c); *see Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 189 (5th Cir. 2010) (affirming dismissal of "RICO action[] based on predicate acts of securities fraud"); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.").

Failure to grant a stay will cause Stream Energy severe, unnecessary, and irreparable injury, as the Fifth Circuit has twice confirmed—first when it granted Stream Energy's Rule 23(f) stay motion, and again with it granted Stream Energy's stay motion under Federal Rule of Appellate Procedure 41.  *See Torres v. S.G.E. Mgmt., L.L.C.*, No. 14-90004 (5th Cir. Mar. 4, 2014) (granting Rule 23(f) stay); *Torres v. S.G.E. Mgmt., L.L.C.*, No. 14-20128 (5th Cir. Dec. 7, 2016) (granting Fed. R. App. P. 41 stay).  Failure to grant a stay will also cause irrevocable harm to the reputation and business interests of class members and innocent third-parties alike.

In contrast to this overwhelming and unnecessary harm, a stay will cause Plaintiffs and the putative class no harm—it will merely maintain the status quo that has existed since March 2014. Indeed, a stay will actually *benefit* Plaintiffs and class members by avoiding the confusion and substantial expenses attendant to re-notifying 150,000 putative class members, should Stream Energy prevail on its 12(c) motion.  *See*, *e.g.*, *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2 (D. Kan. Oct. 23, 2006) ("[A] court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from . . . modification after notice dissemination.") (citing Federal Judicial Center, *Manual for Complex Litigation* § 21.28 (4th ed.)).  A stay is also in the public interest.  *See Marx v. Centran Corp.*, 747

F.2d 1536, 1552 (6th Cir. 1984) ("To require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake.").

This case has been pending in the courts for over *eight years*—and proceedings in this Court have been stayed for *three-and-a-half years*. A brief stay, while this Court resolves Stream Energy's 12(c) motion, and determines whether the claims Plaintiffs have alleged are even viable, would be negligible. Accordingly, Stream Energy respectfully requests that this Court temporarily stay issuance of class notice pending resolution of Stream Energy's Rule 12(c) motion.

## NATURE AND STAGE OF THE PROCEEDING

On January 13, 2014, this Court certified a class comprising over 150,000 of Stream Energy's current and former Independent Associates ("IAs"). *Torres v. SGE Mgmt., LLC,* 2014 WL 129793, at *11 (S.D. Tex. Jan. 13, 2014). Stream Energy asked the Fifth Circuit to review the certification order and stay the trial proceedings pending its review. The Fifth Circuit granted both requests, and a divided three-judge panel reversed. *Torres v. S.G.E. Mgmt., L.L.C.*, 805 F.3d 145, 155–59 (5th Cir. 2015). The Fifth Circuit then granted rehearing en banc, *Torres v. S.G.E. Mgmt., L.L.C.*, 815 F.3d 247 (5th Cir. 2016), and a divided en banc court affirmed the class-certification order on September 30, 2016. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 638–46 (5th Cir. 2016). In remanding the case, the Fifth Circuit explicitly noted that, "the district court may revisit its decision and choose to decertify the class should the Defendants eventually produce individualized rebuttal evidence causing their individualized defense to predominate." *Id.* at 645.

Stream Energy then sought rehearing, seeking to ensure that the certified class was limited to IAs who lost money. In denying Stream Energy's petition, the en banc court noted that although this Court's class definition was not limited to "just those who lost money," Stream Energy and Plaintiffs "agree, however that the class must be limited to IAs who lost money." *Torres v. S.G.E.*

*Mgmt., L.L.C.*, No. 14–20128 (5th Cir. Nov. 29, 2016) ("Our en banc opinion unequivocally states that the certified class comprises only 'those who lost money participating as Independent Associates ("IAs") in Ignite's programs.'") (quoting *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d at 632). On December 7, 2016, the Fifth Circuit stayed issuance of its mandate—continuing its stay of all trial proceedings—pending Stream Energy's petition for certiorari. *Torres v. S.G.E. Mgmt., L.L.C.*, No. 14–20128 (5th Cir. Dec. 7, 2016). The Supreme Court denied certiorari on October 2, 2017. *S.G.E. Mgmt., L.L.C. v. Torres*, 2017 WL 1650317 (U.S. Oct. 2, 2017). The Fifth Circuit's mandate issued on October 17, 2017.

### ISSUE STATEMENT

Stream Energy has moved for judgment on the pleadings under Rule 12(c) because Plaintiffs' RICO claims are barred by the PSLRA. Stream Energy is likely to prevail on that motion. Staying the issuance of class notice for a brief period to allow this Court to resolve Stream Energy's Rule 12(c) motion will cause Plaintiffs and the absentee class members no harm, let alone substantial harm. Prematurely issuing class notice, however, would cause Stream Energy to suffer severe, unnecessary, and irreparable injury—and it would sow confusion, potentially forcing the parties to incur duplicative expenses to issue a corrective notice, harm countless third parties, and waste judicial resources. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983); *see also R&D Bus. Sys.*, 150 F.R.D. at 91. Should this Court stay the issuance of class notice pending resolution of Stream Energy's Rule 12(c) Motion for Judgment on the Pleadings?

### ARGUMENT

The decision about when to send class notice is left "to the sound discretion of the Court and the circumstance of the particular case." *R&D Bus. Sys. v. Xerox Corp.*, 150 F.R.D. 87, 91 (E.D. Tex. 1993); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94

(D.D.C. 2012) ("This Court has discretion as to the timing of notice"); *Cavin v. Home Loan Ctr. Inc.*, 469 F. Supp. 2d 561, 574 (N.D. Ill. 2007) ("Rule [23] affords the Court discretion to control the manner in which a class action proceeds, including the timing of the mailing of notice to the class."), *aff'd*, 531 F.3d 526 (7th Cir. 2008)

"Whether to delay notice involves the consideration of two factors:  1) the prejudice the delay will cause absentee class members and 2) the harm to the defendant." *Hamilton*, 2007 WL 1395592, at *1; *see also R&D Bus. Sys.*, 150 F.R.D. at 91 ("[T]he 'main consideration' is whether any delay would prejudice the class.") (citing 7B Wright, Miller & Kane, Federal Practice and Procedure 2d, § 1788 at 224).  Accordingly, "courts have repeatedly chosen to delay the issuance of class notice" when "early notice might adversely affect one party while a delay in notice would not prejudice any party." *R&D Bus. Sys.*, 150 F.R.D. at 91.

To the extent a stay is required to delay distribution of class notice until the Court has the opportunity to rule on Stream Energy's Rule 12(c) motion, Stream Energy must "present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Baylor Univ. Med. Ctr.*, 711 F.2d at 39 (laying out well-established, four-factor balancing test—(1) likelihood of success on the merits, (2) irreparable injury if stay not granted, (3) whether the stay would substantially harm other parties, and (4) public interest—and explaining that courts "apply these factors in a rigid, mechanical fashion"); *see also Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (movant "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.").

Stream Energy's 12(c) motion presents a substantial issue and has a high likelihood of success on the merits—especially considering the Fifth Circuit cases directly on point. And, as the Fifth Circuit has twice confirmed in this litigation, the equities favor a stay. Absent a stay, Stream Energy will suffer irreparable injury. But granting a stay will cause no harm to Plaintiffs or putative class members. Indeed, delaying distribution of class notice is particularly warranted where, as here, success on Stream Energy's 12(c) motion result in the dismissal of Plaintiffs' complaint. *See*, *e.g.*, *Marx*, 747 F.2d at 1552 ("To require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake."); *Wooten v. Hamilton Cty.*, 94 F.R.D. 176, 177 (S.D. Ohio 1982) (granting motion to delay notice because "plaintiff would not have been put to the expense of notifying the class in a losing cause [and] the members of the class would not have been disturbed by the notice").

## I.   Stream Energy's Rule 12(c) Motion Presents a Serious Legal Question on which Stream Energy is Likely to Prevail

To obtain a stay, "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); *see also Baylor Univ. Med. Ctr.*, 711 F.2d at 39.

Here, however, Stream Energy *can* demonstrate a likelihood of success on the merits. As explained in Stream Energy's Rule 12(c) motion, RICO was amended in 1995 to make clear that "conduct that would have been actionable" as securities fraud is not actionable in a civil RICO case. Private Securities Litigation Reform Act of 1995 (PSLRA) § 107, Pub. L No. 104-67, 109 Stat. 737, 758, codified at 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."). As one court succinctly explained, this amendment "eliminate[s] securities fraud as a

7

predicate offense in a civil RICO action" and "bar[s] a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 618 (S.D. Tex. 2003).

Plaintiffs' allegations are that Stream Energy "operate[s] a pyramid scheme in violation of the RICO Act." Pl.s' Second Am. Compl. ¶346 (Dkt. 60, at 108); *see id.* ¶¶ 364–370 (Dkt. 60, at 115–17 (alleging Stream violated § 1962 by "conducting the affairs and supporting the acts of the pyramid scheme"); *see also Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 632 (5th Cir. 2016) (en banc) ("The Plaintiffs–Appellees brought a civil action under the Racketeer Influenced and Corrupt Organizations Act ('RICO'), alleging that Stream Energy, through its multi-level marketing program, Ignite, . . . operated a fraudulent pyramid scheme.") (citations omitted).[2]

These allegations are fatal to Plaintiffs' case. As the Fifth Circuit repeatedly has ruled, "for purposes of the Securities Act of 1933 and the Securities Exchange Act of 1934, a pyramid distribution scheme is a security." *Piambino v. Bailey*, 610 F.2d 1306, 1316 (5th Cir. 1980); *see also S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 474 (5th Cir. 1974) (same). In other words, the allegedly fraudulent conduct described in Plaintiffs' allegations—operating a pyramid scheme—"would have been actionable as fraud in the purchase or sale of securities" and, accordingly, *cannot* be used "to establish a RICO violation." 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].").

---

[2]    Stream Energy vehemently denies that it is an illegal pyramid scheme. But because, at the pleadings stage, the court must accept as true all of the allegations contained in Plaintiffs' complaint, this motion assumes the truthfulness of Plaintiffs' allegations. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Accordingly, Stream Energy's Rule 12(c) motion has a high likelihood of success—it demonstrates that Plaintiffs' complaint, which alleges only RICO violations, must be dismissed. *See Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 189 (5th Cir. 2010) (affirming dismissal of "RICO action[] based on predicate acts of securities fraud"); *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 30 (3d Cir. 1999) ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud."); *see also Martinez v. MXI Corp*, 2016 WL 951430, at *8 (D. Nev. Mar. 9, 2016) ("[I]nvestments in pyramid schemes are securities as a result of the nature of pyramid schemes, rather than the specifics of any agreements.  As a consequence, the PSLRA is the correct vehicle for a challenge based on the operation of a pyramid scheme rather than RICO.  Therefore, Defendants are correct when they argue that [Plaintiffs' complaint] should be dismissed.").

A stay is therefore warranted pending resolution of Stream Energy's Rule 12(c) motion, because that motion is dispositive of this case.  As the Sixth Circuit has explained, "[t]o require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake."  *Marx*, 747 F.2d at 1552.

## II.     The Equities Favor a Stay:  A Stay Will Forestall Irreparable Harm to Stream Energy, While Imposing No Burden on Plaintiffs or Putative Class Members

In determining whether to delay class notice, courts generally consider (1) harm to the defendant from issuance of the notice and (2) prejudice to absentee class members caused by the delay.  *R&D Bus. Sys.*, 150 F.R.D. at 91; *see also Baylor Univ. Med. Ctr.*, 711 F.2d at 39 (movant must "show that the balance of equities weighs heavily in favor of granting the stay") (quoting *Ruiz*, 650 F.2d at 565).  "When early notice might adversely affect one party while a delay in notice

9

would not prejudice any party, courts have repeatedly chosen to delay the issuance of class notice." *Id.*; *Beale v. EdgeMark Fin. Corp.*, 1995 WL 631840, at *2 (N.D. Ill. Oct. 23, 1995) (same).

Issuing class notice will cause Stream Energy immediate, irreparable damage to its business model and success as an energy company, and it will impose hefty, irrecoverable costs on the company.  A stay will cause Plaintiffs and putative class members no harm—let alone substantial harm.

### A.      Absent a Stay, Stream Energy Will Suffer Irreparable Harm, as Will Innocent Third-Parties

As Stream Energy explained to the Fifth Circuit when it requested a stay pending resolution of its Rule 23(f) appeal and when it sought to stay the Fifth Circuit's mandate pending certiorari, without a stay, Stream energy will:  (1) suffer permanent, irreparable harm to its business; and (2) face significant, wholly unnecessary litigation costs.  Twice the Fifth Circuit agreed, and granted Stream Energy's stay motions.  *See Torres v. S.G.E. Mgmt., L.L.C.*, No. 14-90004 (5th Cir. Mar. 4, 2014) (granting Rule 23(f) stay); *Torres v. S.G.E. Mgmt., L.L.C.*, No. 14-20128 (5th Cir. Dec. 7, 2016) (granting Fed. R. App. P. 41 stay).  The same justifications supporting those stays apply with full force here.  A stay will also benefit innocent third parties, including Stream Energy's non-class member IAs and energy customers.

1.      Distribution of class notice will cause immediate, irreparable damage to Stream Energy's business model and success as an energy company.  *See* Aff. of M. Schiro (attached as Ex. 8).

The success of multilevel marketing distribution channels, such as the one employed by Stream Energy to sell energy accounts, rests on (1) the reputation of the company and its associates; and (2) the trust and goodwill that is built up between the company, its associates, and

its customers.  If the notice is distributed, however, both of these vital features of Stream Energy will be irreparably injured.

Plaintiffs desire to "inform" some 150,000 IAs that they are members of a class that is suing Stream Energy for violating RICO.  The class notice not only suggests that Stream Energy is operating an illegal pyramid scheme, but also carries with it the appearance of validation by a federal judge. Dkt. 176-1, at 4.  This Court has, after all, approved class certification.  *See*, *e.g.*, *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 757 (3d Cir. 1974) (class members held accounts with defendant credit card company which foresaw the possibility that those with account debts would withhold payment and endanger the stability of the company upon notice of the action); *Haas v. Pittsburg Nat. Bank*, 381 F. Supp. 801, 806 (W.D. Pa. 1984), aff'd in part and reversed in part on other grounds, 526 F.2d 1083 (3d Cir. 1975) (class notice "may carry with it an almost inescapable connotation of wrongdoing").  Distribution of class notice will irreparably harm Stream Energy's relationship with its employees, IAs, and business partners.

To make matters worse, Plaintiffs' RICO claims against Stream Energy are not viable—as explained in Stream Energy's Rule 12(c) motion.  Accordingly, issuance of class notice will impose these irreparable harms—damaging the goodwill and reputation that Stream Energy has spent years building—in furtherance of a complaint that does not state any viable claims. *Goodman v. Dell Pub. Co.*, 1995 WL 368596, at *1 (E.D. La. June 20, 1995); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("loss of reputation, good will, and business opportunities" constitutes irreparable harm); *see also Intercontinental Terminals, LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 896 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (finding irreparable harm based "the loss of reputation and goodwill threatened [that] would be 'very difficult to calculate'"); *see also Lionheart, Inc. v. PGS Onshore, Inc.*, 2007 WL 1704906,

at *2 (Tex. App.—Waco 2007 June 13, 2007, no pet.) (finding irreparable harm because "interruption in the seismic shooting schedules" will cause defendant "damage to its reputation in the oil and gas industry").

And that harm is irremediable. Even if this Court ultimately grants Stream Energy's 12(c) motion, notice will have already been distributed to 150,000 putative class members. Having been let out, the cat cannot be put back in the bag.

2.     Absent a stay, Stream Energy will also face hefty, irrecoverable costs. As Stream Energy indicated in its Opposition to Plaintiffs' Motion for Approval of Class Notice, Plaintiffs' motion is defective because it lacks any plan for distribution of class notice to individual class notice. Dkt. 189, at 13. Indeed, just as Stream Energy feared, the Court ordered Stream Energy to share the and burden of "diligently cooperat[ing] to use these documents, and to make all other reasonable efforts, to promptly notify the class members of the this class action." Dkt. 191, at 1. But the costs attendant to identifying class members are not the only costs a stay would enable Stream Energy to avoid incurring.

If Stream Energy prevails on its Rule 12(c) motion, re-notification will be required for each of the 150,000 putative class members. And Stream Energy will be forced to incur costs related to resolving inquiries from confused IAs, who have received conflicting class notice. *See Brown*, 2012 WL 5818300, at *4 (staying class notice and holding that a "curative notice to the class, perhaps many months or more after the initial class notice was disseminated . . . would not be sufficient to stem the confusion that would arise in the event of a change to the class definition or decertification of the class altogether"). What's more, such confusion—and required re-notification—could exist even absent success on Stream Energy's 12(c) motion because, as the

Fifth Circuit made clear, the current class definition must be altered to include only IAs who lost money.[3]

3.        For similar reasons, countless innocent third parties—namely, all of Stream Energy's IAs (both members of this alleged class and those who are not) and many of its energy customers—will also be harmed absent a stay.  There are *thousands* of IAs in the field actively selling Stream Energy accounts.  The issuance of this class notice will devastate both their business and their reputations, and it will strain their relationships with Stream Energy customers.  *See generally* Aff. of B. Wright (attached as Ex. 7).

As explained above, the class notice will have devastating consequences for Stream Energy's business—consequences that will directly affect the businesses of the individual IAs as well.  Moreover, the IAs will also suffer ruinous injury to their personal reputations.  The notice accuses them of embroiling their customers and recruits in a racketeering scheme.  Such accusations are likely to cause immediate and permanent reputation harm.  There is no reason to inflict this harm on thousands of innocent people right now—especially when the alternative is a brief delay while the Court determines whether Plaintiffs' have stated any viable claims.

B.        **A Stay Will Not Prejudice Absentee Class Members—Indeed, Absentee Class Members Will Likely Be Harmed Absent a Stay**

Given the brevity of the stay sought by Stream Energy—only long enough for this Court to rule on its Rule 12(c) motion—the stay will not prejudice absentee class members.  They will still have ample "time . . . to make their appearance" and "opportunity to present their objections."

---

[3]        In addition to the class-definition problem identified by the Fifth Circuit, decertification of the class—which the Fifth Circuit explicitly contemplated and which Stream Energy will seek should it prove necessary—could also sow confusion among the absentee class members.  838 F.3d at 645 ("[T]he district court may revisit its decision and choose to decertify the class should the Defendants eventually produce individualized rebuttal evidence causing their individualized defense to predominate.").

*R&D Bus. Sys.*, 150 F.R.D. at 91 (alteration in original) (quoting *Mullane v. Cent. Hanover Bank*

*& Trust Co.*, 339 U.S. 306, 314 (1950)).  As one court explained,

> Defendants merely ask this Court to delay sending the notice and not to prevent
> notice from being sent altogether. . . .  The most important function of class notice
> is to allow class members to have the opportunity to present their objections and
> make their appearance prior to a resolution of the lawsuit.  These functions will not
> be affected by a delay.  At worst, the class members will not be able to exercise the
> requisite due process rights as quickly as Plaintiffs would like, but the Plaintiffs
> have failed to articulate how this effect prejudices the absent class members.

*Hamilton*, 2007 WL 1395592, at *1.

Not only does a stay not prejudice the putative class members, but "putative class

members" actually "face a likelihood of harm should a stay not issue."  *Brown v. Wal-Mart Stores,*

*Inc.*, 2012 WL 5818300, at *12 (N.D. Cal. Nov. 15, 2012).  Should Stream Energy prevail on its

Rule 12(c) motion after notice has been sent, a second, curative notice will need to be sent to the

putative class members.  As numerous courts have recognized, "issuance of a second curative

notice to the class" will engender "confusion among the class members."  *Id.* at *4; *see also*

*Whitlock v. FSL Mgmt., LLC*, 2012 WL 6675124, at *3 (W.D. Ky. Dec. 21, 2012) ("[A] corrective

notice . . . would create significant confusion among the potential class members.  Because a

potential plaintiff in a Rule 23(b)(3) action is bound unless he or she opts out, voiding a previously

issued class notice could create significant issues regarding whether additional action must be

taken after any corrective notice is received by the class members.") (quoting *Powell v. Tosh*, 2012

WL 1202289, at *5 (W.D. Ky. April 10, 2012); *In re Polyurethane Foam Antitrust Litig.*, 2014

WL 12591692, at *5 (N.D. Ohio May 16, 2014) (staying class notice and explained that "[i]n

exercising this discretion, district courts cite the desire to avoid confusing absent class members

with successive class notices").[4]

---

[4]    *See also In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2 (D. Kan. Oct. 23, 2006 ("[T]he
court is persuaded that the potential confusion that could result if the [a court] were to vacate or modify the class

In addition, the process of identifying the putative class members and distributing notice to them will intrude on absentee class members' privacy rights. *See Brown*, 2012 WL 5818300, at *4 ("Disclosing . . . sensitive personal information before resolution of Defendant's [motion] . . . unnecessarily risks the intrusion of individuals' privacy who may not ultimately belong to the class, if any class remains."); *see also Wooten*, 94 F.R.D. at 177 (granting stay in part because "members of the class would not have been distributed by the notice").

In short, not only will absentee class members not be prejudiced by a stay, they will actually suffer harm if a stay is not granted.

## C.     A Stay Will Not Harm Plaintiffs

A stay is particularly warranted here because it will cause Plaintiffs no harm—let alone substantial harm. Indeed, a stay will actual inure to Plaintiffs' benefit as well.

Plaintiffs here seek monetary damages for past harm—not injunctive relief, so a minor delay will have no effect on the relief plaintiffs seek. *Cf. Sampson v. Murray*, 415 U.S. 61, 90–92 (1974) (no irreparable injury where monetary relief available). Stream Energy is the fourth largest energy provider in Texas. As Judge Jones noted, Stream Energy is a successful company that "sells a lot of real product to real people at favorable prices"—and people continue to make money as IAs today. 838 F.3d at 653 (Jones, J., dissenting). As a result, the only harm Plaintiffs could suffer is delayed recovery, should they ultimately prevail. That injury, however, is easily remediable through pre-judgment interest.

---

certification order after notice has already been disseminated to class members counsels against proceeding to issue notice at least until the Circuit has resolved the request to take the appeal.") (citing *Manual for Complex Litigation* § 21.28 (4th ed. 2012) ("[T]he district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination.").

In fact, a short stay will actually benefit Plaintiffs as well.  Should Stream Energy prevail on its Rule 12(c) motion, a stay will save Plaintiffs the time, effort, and money of sending out a defective notice and will eliminate the burden and expense of having to send out corrective notices. *See*, *e.g.*, *Wooten*, 94 F.R.D. at 177 (granting staying in part because "plaintiff would not have been put to the expense of notifying the class in a losing cause"); *Hamilton*, 2007 WL 1395592, at *2 (granting stay because "if [defendant's dispositive motion] terminates the case, the parties will not expend the additional time and resources to continue adjudicating the issue of class notice or the lawsuit altogether"); *cf. Marx*, 747 F.2d at 1552 ("To require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake.").

The equities weigh heavily in favor of staying class notice pending disposition of Stream Energy's Rule 12(c) motion.

### D.      A Stay Is in the Public Interest

A stay is also in the public interest.  It will enable the Court to determine whether Plaintiffs have stated any viable claims before requiring distribution of class notice, which promotes judicial economy and efficiency.  *See*, *e.g.*, *Marx*, 747 F.2d at 1552 ("To require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake."); *Hamilton*, 2007 WL 1395592, at *2 ("[I]f [defendant's dispositive motion] terminates the case, the parties will not expend the additional time and resources to continue adjudicating the issue of class notice or the lawsuit altogether . . .  [J]udicial economy would be served by delaying class notice at this time"); *Boutros v. JTC Painting & Decorating Corp.*, 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013) ("The court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management, and it does not promote efficient case management to facilitate notice

to potential class members where the representative plaintiffs have failed to state plausible [RICO] violations.") (internal citation omitted); *Jenkins v. Hyundai Motor Fin. Co.*, 2008 WL 2268319, at *5 (S.D. Ohio June 2, 2008) (recognizing the public interest in minimizing potential confusion that could result from potentially erroneous notices, and staying notice to class); *Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-CV-01820, slip op. 2 (ECF Dkt. 178) (D. Nev. Dec. 19, 2014) ("[T]he court finds that it is in the best interests of all parties and judicial economy to resolve the pending 12(c) and decertification motions before the notice process begins and the parties incur the tremendous related expense."); *cf. Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) ("The public interest lies in proper resolution of the important issues raised in this case, and issuance of a stay would avoid wasting resources on a class action litigation which might be changed in scope on appeal.").[5]

In these circumstances, it is in the public interest to maintain the status quo pending disposition of Stream Energy's Rule 12(c) motion.

### CONCLUSION

Stream Energy's 12(c) motion presents a serious legal question on which Stream Energy is likely to prevail. *Baylor Univ. Med. Ctr.*, 711 F.2d at 39. Absent a stay, Stream Energy will suffer severe, unnecessary, and irreparable injury. Briefly staying issuance of class notice, however, will cause Plaintiffs and absentee class members to suffer no harm at all—let alone substantial harm. *Id.*; *see also R&D Bus. Sys.*, 150 F.R.D. at 91. For the reasons, this Court should

---

5       *See also Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) ("With respect to the fourth factor, the public interest lies in a correct application of the federal constitutional and statutory provisions upon which the claimants have brought this claim.") (internal quotation marks omitted); *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1,6 (D.D.C. 2002) ("[T]he public interest really is rooted in the proper resolution of the important issues raised in this case," and a stay "in order to ensure the proper legal result in this case is best aligned with that interest.").

stay issuance of class notice pending resolution of Stream Energy's 12(c) Motion for Judgment on the Pleadings.

DATE:  October 18, 2017                    Respectfully submitted,

                                           **GIBSON, DUNN & CRUTCHER, LLP**

                                           By:  _/s/  Robert C. Walters_
                                           Robert C. Walters
                                               *Attorney-in-Charge*
                                               Texas Bar No. 20820300
                                               S.D. Tex. Bar No. 1206129
                                           James C. Ho
                                               Texas State Bar No. 24052766
                                               S.D. Tex. Bar No. 918335
                                           Andrew P. LeGrand
                                               Texas Bar No. 24070132
                                               S.D. Tex. Bar No. 2827698
                                           2100 McKinney Avenue, Suite 1100
                                           Dallas, TX 75201-6912
                                           Tel.: (214) 698-3100
                                           Fax: (214) 571-2900
                                           RWalters@gibsondunn.com
                                           JHo@gibsondunn.com
                                           APLeGrand@gibsondunn.com

                                           **ATTORNEYS FOR SGE MANAGEMENT, LLC, ET AL.**

## <u>CERTIFICATE OF CONFERENCE</u>

Defendants' counsel have conferred with plaintiffs' counsel on this motion via phone call on October 10, 2017 at approximately 2:00 PM CT.  Plaintiffs' counsel oppose, although counsel for the parties have agreed to confer further on the motion and matters related to the issuance of notice.

*/s/ Robert C. Walters*
Robert C. Walters

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically on October 18, 2017, in compliance with Local Rule 5.  As such, this document was served on all counsel who are deemed to have consented to electronic service per Local Rule 5.1.

*/s/ Robert C. Walters*
Robert C. Walters
