# EXHIBIT 10

2014 WL 12591692
Only the Westlaw citation is currently available.
United States District Court,
N.D. Ohio, Western Division.

In re Polyurethane Foam Antitrust Litigation
This document relates to:
ALL CASES

Case No. 1:10 MD 2196
|
Signed 05/16/2014

MEMORANDUM OPINION
AND ORDER RE: STAY

JACK ZOUHARY, U. S. DISTRICT JUDGE

## INTRODUCTION

**\*1** This Court certified two classes of Plaintiffs: a Direct Purchaser Class (Doc. 1115) and an Indirect Purchaser Class (Doc. 1117). Pursuant to Federal Civil Rule 23(f), Defendants petitioned the Sixth Circuit to review this Court's Memorandum Opinion and Order (Doc. 1102), granting the Direct and Indirect Purchaser Motions for Class Certification (Docs. 584 & 577).

In the meantime, Defendants seek a stay: of *all* proceedings in this multidistrict litigation ("MDL") (*i.e.*, to stay the class proceedings and so-called "direct action" cases); or (more modestly) of all proceedings in the class action cases; or (most modestly) of issuing notice to the absent members of each class (Doc. 1145). Defendants' Motion for Stay is opposed by the Direct Purchasers Class (Doc. 1160), the Indirect Purchaser Class (Doc. 1161), and Direct Action Plaintiffs (Doc. 1158).

## DISCUSSION

This Court applies a four-factor test to Defendants' stay request, considering: "(1) the likelihood of [Defendants'] success on the merits of the claim/appeal; (2) whether the stay will save [Defendants] from irreparable injury; (3) the probability that granting the stay will substantially harm others; and (4) whether the public interest will be served by

the stay." *Beattie v. CenturyTel, Inc.*, 2006 WL 1722207, at \*3 (E.D. Mich. 2006). These four factors are "interrelated considerations that must be balanced together." *Serv. Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (examining a motion for stay under Federal Appellate Rule 8(a)). As the moving party, Defendants must show they are entitled to a stay. *Id.*

**Likelihood of Success on the Merits**
Defendants' burden with respect to showing a likelihood of success on the merits is two-fold: Defendants must show a likelihood that the Rule 23(f) petition will be granted, and that the Sixth Circuit will reverse either or both of this Court's class certification decisions.

The Sixth Circuit "eschew[s] any hard-and-fast test" for use in determining whether to grant a Rule 23(f) petition, "in favor of [exercising] broad discretion" on that question. *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002) (per curiam). *See also* Federal Civil Rule 23 committee's note ("The court of appeals is given unfettered discretion whether to permit the appeal [from an order granting or denying a motion for class certification], akin to the discretion exercised by the Supreme Court in acting on a petition for *certiorari*."). Among other factors, the Sixth Circuit might consider whether: (1) the class certification decision sounds the "death knell" for this case, because the "costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered"; (2) interlocutory review could resolve some particularly novel and unsettled legal question; and (3) the petitioning party is likely to succeed on the merits (*i.e.*, on the underlying contention that the Sixth Circuit should reverse either or both of this Court's class certification decisions). *In re Delta Air Lines*, 310 F.3d at 959–60. The substance of this Court's class certification decision would be reviewed (if at all) for abuse of discretion. *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 1277 (2014) ("We will reverse the class certification decision in this case only if [the party seeking appellate review of a class certification decision] makes a strong showing that the district court's decision amounted to a clear abuse of discretion.").

**\*2** The "death knell" factor is unsupported beyond across-the-board and vague allegations. While each class, as certified, seeks recovery of a substantial amount

of alleged antitrust overcharges and penalties, and Defendants may face pressure to settle, Defendants offer no specifics.

The "novel questions" factor weighs against granting interlocutory review. Defendants catalogue various features of the certified classes or of this Court's class certification analysis, setting each feature up as a novel and unsettled legal question of the type for which Rule 23(f) review likely would be granted. *See In re Delta Air Lines,* 310 F.3d at 960 (noting the novel-questions factor "weigh[s] more heavily in favor of review when the question is of relevance not only in the litigation before the court, but also to class litigation in general"). *But see, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001); *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1275–76 (11th Cir. 2000)* ("We reiterate, however, that a class certification decision which turns on case-specific matters of fact and district court discretion—as most certification decisions indisputably do—generally will not be appropriate for interlocutory review.") (internal quotation marks and citations omitted); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999). Here, Defendants do not identify novel and unsettled legal questions of general applicability; instead, they mischaracterize this Court's class certification analysis; revive arguments this Court previously rejected in its exercise of the substantial discretion afforded it under Rule 23; or base the prospect of appellate review on a belief that the Sixth Circuit will grant Rule 23(f) review to adopt unsupported and erroneous rules of class action jurisprudence followed in no other circuit.

First, Defendants' misstatements: Defendants erroneously find in this Court's "Preliminary Comments ... Prior to Class Certification Hearing" an admission on this Court's behalf that its class certification analysis occurred in a state of legal flux as to the review that is required at class certification (Doc. 1145 at 11) (quoting Doc. 936 at 1). This Court's Order noted an apparent split in the manner in which *circuit courts* have articulated the longstanding "rigorous analysis" requirement in the aftermath of the *Wal–mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) line of cases (*see* Doc. 936 at 1) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013), and *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 1277 (2014)). This Court then stated its conclusion regarding where the Sixth Circuit fell

in that divide of the circuits (*see* Doc. 936 at 1–2). It invited the parties to explain what the Sixth Circuit's articulation of the standard meant "in the context of this case" (*id.* at 2), recognizing an aspect of the "rigorous analysis" standard that hardly needed to be stated to counsel who argued the now-decided motions: the "rigorous analysis" standard does not apply itself; how should it apply to the facts of these particular cases?

Defendants' comments on the Classes' impact burden as it relates to predominance also ignores that Defendants themselves—in brief, in their expert submissions, and during oral argument—articulated the very standard this Court applied (*see, e.g.*, Doc. 680 at 7, 9–10 (comparing the Direct and Indirect Purchasers' impact burdens), 16; Doc. 682 at 11, 12, 15, 58, 59, 61; Doc. 679–1 at 17; Doc. 682–1 at 6, 131 (Defendants' primary expert commenting that "the fundamental question [at class certification is] whether all or virtually all *class members* suffered antitrust injury" (emphasis in original)); Doc. 967 at 18, 83 ("[Defense counsel, arguing that impacted revenues alone is not a sufficient basis for a classwide showing of impact]: "You have to show impact on all or nearly all class members, not on class members that account for a specific percentage of class revenues"), 176, 198). Defendants' about-face is perplexing.

**\*3** Second, Defendants' renewed arguments (Doc. 1145 at 13–19): Each such argument, at bottom, challenges whether these particular parties and party experts advance methodologies that can be used to show impact or damages on a classwide basis. This Court's class certification decision speaks for itself, and its conclusions on each of these renewed arguments need not be rehashed here.

Finally, Defendants' erroneous and unsupported view of the manner in which this Court should have resolved certain questions: Defendants argue that in this Court's treatment of liability questions, this Court saw merits questions unconnected to Rule 23 requirements where there were none (*see id.* at 16) (citing to portions of this Court's class certification decision addressing liability questions for the contention that "[t]he Court ... relied on Plaintiffs' unfounded allegation that the class was bound by the purported effects of a single, broad price-fixing conspiracy, holding that Defendants' challenges to the alleged conspiracy—and the errors in Plaintiffs' statistical models—were impermissible attacks on the merits of

Plaintiffs' claims."). Aside from misstating this Court's analysis with respect to liability questions—this Court did not accept Plaintiffs *allegations* regarding the fact of agreement, but instead examined the nature of Plaintiffs' *evidence* of agreement to determine whether that evidence could serve as common proof of liability—Defendants argue it was this Court's task at class certification to determine (for example) whether Defendants' exchange of draft price increase letters was, in fact, simply competitive intelligence gathering (*see, e.g.*, Doc. 682 at 25). *See also* Doc. 1145 at 16 (arguing neither Class satisfies Rule 23(a)(1)'s commonality requirement). Defendants provide no particularized case law support for this view of Rule 23 jurisprudence, only inapt citations to general Rule 23 principles articulated in *Dukes* and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Defendants' purportedly unsettled questions of law likely double as the basis for their belief that they will not just be granted interlocutory review, but *also* will succeed in obtaining reversal of either or both of this Court's class certification decisions, despite the deferential standard of review that would govern the Sixth Circuit's review on the merits. Defendants do not expressly address this aspect of the *In re Delta Air Lines* standard. Again, this Court explained its reasoning for granting both Motions. Defendants did not move for reconsideration of any portion of this Court's class certification opinion, and instead re-raise (with a few exceptions, noted above) arguments this Court rejected. It is apparent that Defendants object to the manner in which this Court exercised its Rule 23 discretion, which is not a likely basis for success on the merits of their appeal.

### Effect of Granting or Denying a Stay on the Parties and on the Public Interest

In considering a stay pending resolution of a Rule 23(f) petition, a district court should balance the relative harm to each side and to the public interest that would follow granting or denying a stay. Defendants base a showing of irreparable harm on two grounds: (1) the money Defendants would be required to expend to further litigate this matter, or to settle this matter notwithstanding defenses on the merits; and (2) damage to Defendants' goodwill that would result from issuing class notice that may require later modification, depending on how the request for interlocutory review is resolved.

**\*4** This Court concludes Defendants do not establish they will suffer irreparable harm if the class proceedings are not stayed. A showing of irreparable harm requires more than a reference to litigation costs associated with continued district court proceedings, or to settlement pressures. The same factors are present in most (if not all) cases in which a class has been certified under Rule 23(b)(3). *See, e.g.*, *Whitlock v. FSL Mgmt., LLC*, 2012 WL 6675124, at \*2 (W.D. Ky. 2012).

On the other hand, given the unlikelihood that Defendants' petition will be granted, Plaintiffs show they will suffer harm if a stay of class proceedings is granted, and Defendants do not address this aspect of stay analysis. A stay of class proceedings would not simply require Plaintiffs to wait longer to further litigate their claims (which, of course, is prejudice in itself); Plaintiffs allege —and soon must prove—a broad and lengthy conspiracy among multiple actors. Part of that proof will include witness testimony. The longer a merits adjudication is delayed, the more likely it is (according to the old axiom) that witness memories will fade.

Finally, this Court concludes the public interest will be better served by denying a stay. The public has an interest in prompt resolution of the cases that will be tried in this District, and in the return of cases to their respective district of origin for trial. As this MDL currently stands, there *will* be trials separate from the class proceedings (either in this District, or elsewhere). A stay can and will do nothing to avoid those separate trials. A stay will also significantly affect scheduling in a number of other, non-MDL cases pending on this Court's docket, each of which is just as deserving of prompt and efficient resolution as are the actions that comprise this MDL. *See* Federal Civil Rule 1.

The parties have been working toward an October 2014 trial date for quite some time. That schedule was not set in stone at the outset of these proceedings. Together, this Court and counsel adjusted the schedule as needed (*see, e.g.*, Doc. 1146) (Fifth Amended Scheduling Order). Nowhere in that process did Defendants seek to construct a scheduling order that would accommodate a Rule 23(f) petition in the absence of a stay. Most perplexing, *on the very day* the Rule 23(f) petition was filed, and over sharp opposition of Plaintiffs, this Court granted Defendants' request for other modifications of the pretrial schedule (*id.*). During the record phone conference held to discuss

those schedule modifications, Defendants never so much as mentioned their petition or the impending Motion for Stay (*see* Doc. 1137). This Court only learned its decision was the subject of a request for interlocutory review with the filing of the present Motion. Considering all the circumstances, the public interest is better served by proceeding in both cases as currently scheduled.

**Defendants' Request for a Stay of Direct Action Cases**

For the reasons noted above, this Court concludes a stay of the class proceedings is unwarranted. A stay of the Direct Action cases would be even less appropriate. Regardless of how the Sixth Circuit chooses to handle the Rule 23(f) petition, the Direct Action cases will not be affected. Defendants' concern that unnamed Direct Action Plaintiffs will seek to litigate issues separate from the class, and then "in the event of adverse rulings [ ] join the class action[s,]" is speculative (Doc. 1145 at 20). Several Direct Action Plaintiffs have actively litigated this case at much expense through separate counsel; on their own, they have joined in this Court's record conferences and hearings, engaged in discovery and motions practice, and are currently completing expert discovery for purposes of trial. Nothing would be gained from staying these cases.

**Stay of Class Notice**

 **\*5** Defendants' request to stay class notice is granted (to date, only the Indirect Purchaser Class has proposed a form of class notice and notice plan (Doc. 1118)). It is not uncommon for a district court to stay class notice pending resolution of a Rule 23(f) petition while, at the same time, allowing other aspects of class proceedings to continue according to an existing schedule. In exercising

this discretion, district courts cite the desire to avoid confusing absent class members with successive class notices, and note that class notice is not a prerequisite to complete other litigation tasks (*e.g.*, completing discovery) while the district court and the parties await action from the court of appeals. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012); *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at \*3 (D. Kan. 2006).

The same purposes would be served by staying class notice here. After the Sixth Circuit has resolved Defendants' Rule 23(f) petition, the parties and this Court will have a better sense of where this case stands. In the meantime, parties may continue expert discovery and begin the task of briefing summary judgment motions; there is no requirement that Class notice be circulated in advance of continued discovery or possible summary judgment filings.

### CONCLUSION

Defendants' Motion for Stay is granted in part and denied in part. These matters will proceed as scheduled, subject to direction by the Court of Appeals. A phone status will be scheduled promptly following an appellate ruling on Defendants' petition.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2014 WL 12591692

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.