IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Juan Ramon Torres and Eugene Robison, | Civil Action No. 4:09-cv-2056 |
| Plaintiffs, | |
| vs. | |
| SGE Management, LLC; Stream Gas & Electric, Ltd.; Stream SPE GP, *et al*, | |
| Defendants. _____/ | |

**MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................. ii
STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ..................................... 1
I.  SUMMARY ................................................................................................................ 1
II. THE SETTLEMENT CLASS .................................................................................... 2
III. TERMS OF THE SETTLEMENT ............................................................................. 3
IV. THE PARTIES' PROPOSED SETTLEMENT SHOULD BE APPROVED...................... 4
    A.  The Settlement Resulted From Arms-Length Negotiation Before A Well Respected Litigator. ........................................................................................... 6
    B.  The Likely Complexity, Length and Expense of Continued Litigation in The Absence of a Settlement ............................................................................. 6
    C.  The Advanced Stage of the Case Strongly Supports Preliminary Approval ............. 7
    D.  The Settlement is Reasonable in Light of the Risks Faced by the Parties on the Merits ..................................................................................................... 8
    E.  The Settlement is Reasonable Given the Range of Possible Recovery and Certainty of Damages ......................................................................................... 8
    F.  The Requested Attorneys' Fees and Costs Are Reasonable .................................. 10
    G.  The Requested Incentive Awards Are Reasonable .............................................. 10
    H.  The Proposed Notice Is Reasonable and Adequate to Inform Class Members of Their Settlement Options and Rights ................................................. 10
V.  CONCLUSION ........................................................................................................ 11

# INDEX OF AUTHORITIES

**Cases**

*Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, *11 (S.D. Ohio, February 26, 2015) ................................................................................................ 12
*Billitteri v. Secs. Am., Inc.*, No. 09-1568, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) ...................................................................................................................... 8
*Cf. Faircloth*, 2001 WL 527489, at *4 .................................................................................. 9
*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) .............................. 12
*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) .................................................. 6, 10
*Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996) ............................................................................... 7
*Heartland Payment Sys.*, 2012 WL 948365 .................................................................... 9, 10
*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) ............. 6, 9
*In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) *cert. denied*, 135 S. Ct. 754 (U.S. 2014) ......................................................................................................... 5
*In re Educ. Testing Servs.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) ................................ 8
*In re OCA, Inc. Securities and Derivative Litig.*, 2008 WL 4681369, at *10 (E.D. La. 2008) ..................................................................................................................... 5, 7
*In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) ........................................... 6
*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) .......................................... 8
*Klein v. O'Neal*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ......................................... 8, 10
*Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) ................................................ 10
*McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009) .......................................................................................................... 11
*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002) ........................ 6
*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) .................................................. 6
*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ............................................................ 9
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ........................................ 11
*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ....................................... 6, 9
*Rodriguez v. West Publ'g Grp.*, 563 F.3d 948, 966 (9th Cir. 2009) ..................................... 8
*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999) .................................................................................... 10
*Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) .................................................... 6
*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 344 (N.D. Tex. 2011) ............................ 9
*Torres v. SGE Management, LLC*, 838 F.3d 629 (5th Cir. 2016) ................................... 3, 8
*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007) .................. 7, 9

**Statutes**

18 U.S.C. § 1961 .................................................................................................................... 2
18 U.S.C. § 1964(c) ............................................................................................................. 10

**Other Authorities**

4 *Newberg on Class Actions'* 11.41 (4th Ed.) ............................................................................... 7
Manual for Complex Litigation § 21.63 ....................................................................................... 5

**Rules**

Fed. R. Civ. P. 23(e)(2) ................................................................................................................. 6
Federal Rule 23(e) ........................................................................................................................ 2

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

The case has been remanded from the Fifth Circuit Court of Appeals following class certification by this Court. This unopposed motion seeks preliminary approval of a class settlement.

## I. SUMMARY

For almost a decade the parties have locked in fiercely fought and protracted litigation. Plaintiffs Eugene Robinson and Juan Ramon Torres allege that they and thousands of other Class Members lost money because Defendants' marketing program employed an illegal pyramid scheme in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. Defendants contend that Plaintiffs' allegations are meritless because, among other reasons, Stream Gas & Electric serves hundreds of thousands of energy customers and Ignite compensates Independent Associates (IAs) only in relation to actual energy sales.

The parties have battled every stage of the way. After years of litigation, including substantially completing discovery, the Court's granting of class certification, and two interlocutory appeals, the parties now seek preliminary approval of a proposed class action settlement ("Settlement"), which the parties reached with the aid of mediator Murray Fogler. The result of the mediation and hundreds of hours of work and negotiations is attached as **Exhibit A**.[1] This Settlement resolves all current and potential litigation about Defendants' multilevel marketing program, including Plaintiffs' and Class Members' payments, receipts, dealings, and interactions with

---

[1] For the purposes of settlement only, Defendants do not oppose the relief sought in this Motion. Defendants reserve the right to challenge all allegations contained in the Motion, including without limitation those regarding the propriety of class certification, should the Court not finally approve the Settlement.

Defendants regarding their status as Independent Associates of Ignite. The proposed Settlement is eminently fair, reasonable, and adequate. *See* Declaration of Class Counsel, attached as **Exhibit B**.

It is now time to send notice to the class allowing them to participate in the settlement or pursue other remedies. Under Federal Rule 23(e), Plaintiffs respectfully request that the Court (a) certify the proposed Settlement Class; (b) grant preliminary approval of the Settlement; (c) approve the proposed Notice and plan to deliver Notice; (d) set the deadline for filing objections to the Settlement; and (e) schedule a final approval hearing, as described below.[2]

## II. THE SETTLEMENT CLASS

This Court previously certified a class consisting of all IAs who joined Ignite on or after January 1, 2005 through April 2, 2011, and paid more for the Ignite (a) membership, (b) monthly fees for an Ignite Homesite, or (c) other marketing materials than Ignite has paid the IA. Dkt. 276. In certifying the class, this Court found that all requirements for class certification under Rule 23 were satisfied, and the Fifth Circuit sitting *en banc* ultimately affirmed that decision. *Torres v. SGE Management, LLC*, 838 F.3d 629 (5th Cir. 2016) (*en banc*).

The lone difference between the Court's previously certified class and the Settlement Class is that the parties have agreed to include Georgia IAs in the Settlement Class. The Court previously excluded Georgia IAs because the Eleventh Circuit (which sits over Georgia) held that the arbitration clause in IA contracts was enforceable, while the Fifth Circuit held it was not. However, for purposes of this settlement, Defendants have agreed not to enforce any right to compel arbitration against the Georgia IAs. The Georgia IAs thus are similarly situated to other

---

[2] The proposed order filed along with this Motion contains slight corrections from the version attached as Exhibit D to the Settlement Agreement. Counsel for all parties have agreed that Exhibit D to the Settlement Agreement should be corrected as shown in the proposed order.

members of the class.

The inclusion of the Georgia IAs does not change any aspect of the compensation paid to the rest of the class members. Rather, it simply allows the Georgia IAs to receive the same benefits as other class members. Inclusion of the Georgia IAs also yields benefit to the federal courts – to wit, resolving potential cases by the Georgia IAs against Defendants and a potential appeal of this Court's order denying notice to the Georgia IAs. And it permits Defendants to obtain finality of the claims and to treat all potential claimants under the terms of the same settlement agreement.

Accordingly, the Court should include the Georgia IAs in the Settlement Class, provided they meet the other class criteria. The Settlement Class will therefore consist of approximately 179,000 individuals, including about 26,000 Georgia IAs.

### III. TERMS OF THE SETTLEMENT

By any standard, class counsel have negotiated an attractive settlement for their clients. Under the Settlement, Class Members may (a) elect a cash payment, (b) do nothing and automatically enroll in the Benefits Option, or (c) opt out of the Settlement.

Under the cash option, Class Members can elect to receive a cash payment by check equal to 20% of the difference between the total amount they paid Ignite and the total amount that Ignite paid them. Of course, the cash payment will vary based on each Class Members' individual circumstances. For example, if a Class Member paid $329 to Ignite in total and received $100 from Ignite, they would receive a cash payment of $45.80 (that is, 20% of the difference between $329 and $100).

Under the Benefits Option, each participating Class Member will receive:

a. A $5 per month referral payment for each new customer account that enrolls in a Stream Energy electricity plan through the Class Member's Homesite before December 31, 2019, such payment to be made each month that the customer pays

        his or her electricity bill with Stream Energy for a maximum of twelve (12) months per customer account;

    b.    A $2 per month referral payment for each new customer account that enrolls in a Stream Energy gas plan through the Class Member's Homesite before December 31, 2019, such payment to be made each month that the customer pays his or her gas bill with Stream Energy for a maximum of twelve (12) months per customer account;

    c.    Twelve (12) months of free use of the Homesite (current market price of $300) beginning on January 1, 2019 and ending on January 1, 2020;

    d.    Free admission to the 2019 Ignition conference (current market price of $189), provided the Class Member contacts Ignite in writing to request admission at least thirty (30) days before the conference; and in the event that the conference is at capacity, free admission to a future Ignition conference will be provided in lieu of the 2019 conference; and

    e.    For any Class Members whose IA status was previously canceled or terminated, free reinstatement as an IA under the terms described (current market price of $199).

In addition, Benefits-Receiving Class Members shall continue to receive any other compensation or benefits to which they are entitled under their existing IA program.

    Finally, the Settlement provides that Defendants, *not Class Members*, will pay: (1) the costs of administering the Settlement; (2) litigation costs and attorneys' fees to Class Counsel and Associated Class Counsel of up to $10.275 million; and (2) incentive awards (ranging from $5,000 to $15,000 each) to the three Named Plaintiffs.

## IV.    THE PARTIES' PROPOSED SETTLEMENT SHOULD BE APPROVED

    The standards for preliminary approval of a settlement are not as stringent as those applied to a motion for final approval. *See In re OCA, Inc. Securities and Derivative Litig.*, 2008 WL 4681369, at *10 (E.D. La. 2008); Manual for Complex Litigation § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably

should not, engage in analysis as rigorous as is appropriate for final approval"). Courts recognize -- "particularly in class action suits" -- that there is an "overriding public interest in favor of settlement[.]" *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) *cert. denied*, 135 S. Ct. 754 (U.S. 2014).

"The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). At the first stage of the approval process, the Court need only "determine that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)).

This determination requires evaluation of (1) whether there is evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See* Fed. R. Civ. P. 23(e)(2); *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

If these standards are met, "the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D.

424, 426 (E.D. Tex. 2002). The parties' Settlement readily meets these standards.

### A. The Settlement Resulted From Arms-Length Negotiation Before A Well Respected Litigator.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007). *See also* 4 *Newberg on Class Actions'* 11.41 (4th Ed.). In determining whether there is evidence of fraud or collusion, courts often begin by considering whether the parties are represented by experienced counsel. *See Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996). The Court should also consider whether the parties' negotiations took place before an experienced and able mediator. *In re OCA, Inc. Sec. & Derivative Litig.*, 72 Fed. R. Serv. 3d 1060 (E.D. La. 2009).

This Court is familiar with the history of this hard-fought case by experienced counsel. The case was settled only after a full day of mediation in Houston before Murray Fogler, a renowned trial lawyer, experienced class action litigator, and effective mediator, and with all Class Counsel, Associated Class Counsel Jeffrey W. Burnett, and Class Representative Christopher Robison in attendance. In addition, the parties had a second telephonic conference with Mr. Fogler to apprise him of final terms, which he agreed were fair and reasonable. He congratulated the parties on their settlement.

### B. The Likely Complexity, Length and Expense of Continued Litigation in The Absence of a Settlement

This class action involves complex issues and novel applications of the Racketeer Influenced Corrupt Organizations Act. The complexity of both legal and factual issues would necessitate an expensive and lengthy litigation process, as evidenced by the two appeals already

6

prosecuted. Continued litigation would be expensive and time-consuming for all parties.

Defendants have the resources and will defend this case vigorously. If plaintiffs obtained a judgment, the inevitable ensuing appeals would further delay any relief to class members for several additional years. While Class Counsel remain confident in the merits of their legal positions, they also appreciate that justice delayed is justice denied.

This factor weighs strongly for preliminary approval. *See, e.g., Rodriguez v. West Publ'g Grp.*, 563 F.3d 948, 966 (9th Cir. 2009) (affirming approval of settlement where "a number of serious hurdles remained" for the plaintiffs"); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation ... can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive."); *Billitteri v. Secs. Am., Inc.*, No. 09-1568, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (noting there was little doubt that the amount of time it would take to recover on behalf of class members "would measure in years rather than the months contemplated by the parties at this stage"); *Klein v. O'Neal*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened").

### C. The Advanced Stage of the Case Strongly Supports Preliminary Approval

The third factor "asks whether the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Educ. Testing Servs.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (quotations omitted). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed." *Id.* at 620-21.

7

Here, this result has been achieved. *See*, *e.g.*, *Torres v. SGE Mgmt., L.L.C.*, 838 F.3d 629 (5th Cir. 2016) (*en banc*), *cert. denied*, 138 S. Ct. 76, 199 L. Ed. 2d 24 (2017) (describing Plaintiffs' claims and Defendants' defenses in significant detail). Since 2009, the parties deposed nearly two dozen fact and expert witnesses with hundreds of documents as deposition exhibits. The parties have produced over 600,000 pages of documents in discovery, submitted expert and rebuttal expert reports, and filed and responded to myriad motions regarding discovery. By any measure, the discovery that has occurred is more than sufficient to support a fair settlement. *Cf. Faircloth*, 2001 WL 527489, at *4 (approving a settlement where "thousands" of pages were produced).

### D. The Settlement is Reasonable in Light of the Risks Faced by the Parties on the Merits

A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is still reasonably in dispute. See *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326 (5th Cir. 1981) (affirming district court's finding this factor favored approving the settlement when the class still faced obstacles in establishing proof of liability and damages).

Here, "[t]he court is well aware of the parties' positions in this case, the legal issues, and the risks to the Consumer Plaintiffs should litigation continue." *Heartland Payment Sys.*, 2012 WL 948365, at *17 (*citing Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 344 (N.D. Tex. 2011)).

### E. The Settlement is Reasonable Given the Range of Possible Recovery and Certainty of Damages

"In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

8

costs necessarily inherent in taking any litigation to completion." *Turner*, 472 F. Supp. 2d at 849 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999).

Further, courts recognize that parties "give and take to achieve settlements [,]" with neither ending "up with exactly the remedy they would have asked the Court to enter absent the settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). An assessment of the range of possible recovery is based on the realities of litigation. *Cotton*, 559 F.2d at 1330 (a "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes' "). And in high-stakes litigation like this, that "the lower band of the ... Plaintiff's range of recovery is zero: … a judge or jury could conclude that [Defendants are] not liable." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1067.

Finally, Plaintiffs know that none of the defendants are publicly traded companies. If Plaintiffs pursued this case to trial hoping to achieve a jury award and court judgment that exceeds the amounts offered in this settlement, Plaintiffs are aware there is no guarantee that collecting the entire amount, or even a substantial portion, of that judgment would be likely after all appeals are

9

exhausted. Because of these realities, this Settlement represents fair, immediate value for the Class Members.

### F. The Requested Attorneys' Fees and Costs Are Reasonable

Attorneys' fees and costs are recoverable under the common fund doctrine and under the fee shifting provisions of 18 U.S.C. § 1964(c). Defendants have agreed to pay litigation costs and attorneys' fees to Class Counsel and Associated Class Counsel of up to $10.275 million, subject to approval by the Court, which Plaintiffs' Counsel believe is eminently fair and reasonable in light of the compensation and benefits they have secured for the Settlement Class. Class Counsel and Associated Class Counsel will support their specific requests for costs and fees with one or more detailed fee petitions before final approval.

### G. The Requested Incentive Awards Are Reasonable

Defendants do not oppose paying modest incentive awards to each of the Named Plaintiffs, which Plaintiffs' Counsel believe is fair and reasonable. These incentive awards, of $15,000 to the Robinson Estate and $5,000 each to Messrs. Thomas and Torres, recognize the Named Plaintiffs' initiative and efforts on behalf of the Class. Plaintiffs' important contributions to the litigation and the Settlement are well-established. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009); *see also Manual for Complex Litigation (4th Ed.)* § 30.42 (West Group 2001).

### H. The Proposed Notice Is Reasonable and Adequate to Inform Class Members of Their Settlement Options and Rights

To protect the rights of absent Class Members and inform Class Members of their Settlement options, the Court must provide the best notice practicable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Primarily procedural due process provides affected parties

with the right to be heard at the right time and in a meaningful manner. It guarantees no particular procedure, but requires only notice reasonably calculated to apprise interested parties of the pendency affecting their interests and an opportunity to present their objections. *Id.* A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the best notice practicable under the circumstances is email, which is how Defendants typically communicated with the Class Members in the ordinary course of their business. *See* Feb. 1, 2018 Order Granting Plaintiffs' Motion to Approve Class Notice [Dkt. 276] ("The Court finds that since substantially all Ignite's communications with the class members (other than the mailing of checks) is done by email, email is likely the most effective method of notice"); *see also Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, *11 (S.D. Ohio, February 26, 2015) (approving email notice as "in line with the current nationwide trend").

The parties' proposed Notice (attached as Exhibit A to the Settlement Agreement) will be sent by the Settlement Administrator, Epiq Class Action and Claim Solutions, Inc. ("Epiq") by email and, when necessary because of an undeliverable email, follow up postcards (Exhibit C to Settlement Agreement), and it provides putative Class Members with adequate notice of their rights under the Settlement, including information on their options and the required submission deadlines and procedures. These enumerated rights include the right to opt out of the Settlement.

## V.   CONCLUSION

For these reasons, the Court should (a) grant preliminary approval of the terms of the Settlement; (b) approve the proposed Notice and Notice plan; (c) set the deadline for filing objections to the Settlement; and (d) schedule a final approval hearing.

Dated:  June 22, 2018

                          Respectfully submitted,

                          SOMMERS SCHWARTZ, P.C.

                          s/ Andrew Kochanowski
                          Andrew Kochanowski (MI Bar No. P55117)
                          Lance C. Young (MI Bar No. P51254)
                          Attorneys for Plaintiffs
                          One Towne Square, Suite 1700
                          Southfield, MI 48076
                          (248) 355-0300
                          akochanowski@sommerspc.com
                          lyoung@sommerspc.com

                          PREBEG, FAUCETT & ABBOTT PLLC
                          Matthew J.M. Prebeg
                          Texas State Bar No.  00791465
                          Southern District Bar No. 603742
                          Brent T. Caldwell
                          Texas State Bar No.: 24056971
                          Southern District Bar No. 827326
                          8441 Gulf Fwy., Ste. 307
                          Houston, TX 77017
                          mprebeg@pfalawfirm.com
                          bcaldwell@pfalawfirm.com

                          THE CLEARMAN LAW FIRM PLLC
                          Scott M. Clearman
                          Texas State Bar No. 04350090
                          2815 S. Blvd.
                          Houston, TX 77098
                          713-304-9669
                          scott@clearmanlaw.com

                          *Attorneys for Plaintiffs*

**CERTIFICATE OF CONFERENCE**

For settlement only, Defendants do not oppose the relief sought. Defendants reserve the right to challenge all allegations in the Motion, including without limitation those related to reconsideration of the appropriateness of class certification, should the Settlement not be finally approved by the Court.

s/ Andrew Kochanowski
Andrew Kochanowski (MI Bar No. P55117)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300

**CERTIFICATE OF SERVICE**

I certify that on June 22, 2018, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record on the ECF Service List.

s/ Andrew Kochanowski
Andrew Kochanowski (MI Bar No. P55117)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
