IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Juan Ramon Torres, Christopher Robison,
as Executor of the Estate of Eugene Robison,
Deceased, and Luke Thomas,

    Plaintiffs,

vs.

SGE Management, LLC, et al.,

    Defendants.

Civil Action No. 4:09-cv-2056

**DECLARATION OF ERIC F. CITRON**

I, Eric F. Citron, under penalty of perjury, testify as follows:

1. I am Eric F. Citron, of the law firm Goldstein & Russell, P.C. (G&R). I am among the associated counsel for the class in the above-captioned case, and represented the class as counsel in the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court.

2. Our firm was first approached by Mr. Matthew Prebeg and Mr. Andrew Kochanowski in February of 2014. They explained to me and Mr. Thomas Goldstein that they represented a class that had been certified in the Southern District of Texas and were facing a pending petition for immediate appeal under Federal Rule of Civil Procedure 23(f).

3. At that time, our firm reached an agreement with Mr. Prebeg and Mr. Kochanowski that we would contest the Rule 23(f) petition in exchange for a flat fee if we prevailed. If we did not prevail, and the petition were granted, we agreed to negotiate further about terms on which G&R might continue to assist the class in further proceedings on appeal.

4.      At this time, no one at G&R was aware that Mr. Scott Clearman had also been appointed as class counsel, nor were we aware of the circumstances of his incapacitation for medical treatment. We believed and had every reason to believe that Mr. Prebeg and Mr. Kochanowski could enter into a binding agreement for the class and for class counsel, and we entered into our initial agreement in reliance on their ability to do so.

5.      In or around June of 2014, Mr. Prebeg and Mr. Kochanowski again approached our firm, seeking to retain us as representatives for the class on the merits in the Fifth Circuit. After an extended negotiation, G&R and Mr. Prebeg and Mr. Kochanowski executed the written agreement attached to this fee petition as Ex. A.

6.      As before, at this time, no one at G&R was aware that Mr. Clearman had also been appointed as class counsel, nor were we aware of the circumstances of his incapacitation for medical treatment. We believed and had every reason to believe that Mr. Prebeg and Mr. Kochanowski could enter into a binding agreement for the class and for class counsel, and we entered into the signed agreement of June 26, 2014 in reliance on their ability to do so.

7.      I subsequently represented the class as its primary appellate counsel from June of 2014 until this case was remanded to this Court at the end of 2017. In that capacity, I prepared the following substantive filings and conducted the following oral arguments, in addition to drafting and filing procedural motions and other, less substantial papers (such as extensions, notices of appearance, and court-ordered forms).

    A.  A brief opposing defendants' Rule 23(f) petition,

    B.  A brief on the merits in the initial appeal,

    C.  A supplemental appendix for use by the Fifth Circuit in the appeal,

    D.  A post-argument supplemental brief ordered by the Fifth Circuit,

    E. A Rule 28(j) letter respecting new authority,

    F. Oral argument before the initial Fifth Circuit panel,

    G. A petition for rehearing *en banc*,

    H. A supplemental brief for the *en banc* Fifth Circuit,

    I. An opposition to divided argument requested by defendants' amici,

    J. Oral argument before the *en banc* Fifth Circuit,

    K. A Rule 28(j) letter respecting post-argument submissions by defendants' amici,

    L. An opposition to rehearing before the *en banc* Fifth Circuit, and

    M. A brief in opposition to certiorari before the United States Supreme Court.

8. For various reasons, this case required significant time and attention. One was the sheer number of filings and proceedings detailed above. Another was the detailed record presented on appeal, and the resulting need for intensive record review and research. I spent many hours exploring and making calculations based on the comprehensive database of Independent Associates (IAs) that the expert witness had prepared. I read transcripts of district court hearings, reviewed many exhibits attached to the motions for class certification and summary judgment filed in the district court, and researched the record respecting individual IAs. Because defendants contested the reading and proper interpretation of the data, and the Fifth Circuit expressed an interest in it via a request for supplemental letter briefing, I was required to perform this research multiple times and in different ways to adequately respond. I faced a similar requirement when certain IAs filed an unexpected brief as amici of the defendants reciting their experiences as IAs. I conducted this record research with assistance from Mr. Prebeg, Mr. Kochanowski, and others at their firms and on the team representing the plaintiffs. Of all the appeals I have participated in, this one required the most extensive research into and understanding of the record assembled below.

9. I also performed an extraordinary amount of legal research for this case. At one point, I reviewed every single case in state or federal court that I could find on Westlaw containing the words "pyramid scheme" and "class action" in an effort to ascertain whether any Court had ever decertified a case like this one, or whether any private pyramid scheme case had ever proceeded without a class action. I knew that this appeal would be hard-fought based on the strength of defendants' counsel and the controversial nature of class certification issues in the law generally and in the Fifth Circuit in particular. Accordingly, I tried to ensure that my legal research was wide-ranging, exhaustive, and meticulous, at every stage of the appeal.

10. While I was able to use some of what I learned in the briefing and argument on the initial appeal in the subsequent *en banc* proceedings to help me craft the brief and argument, the brief at the *en banc* stage was quite different and covered different issues. In particular, we researched and introduced new graphic and table elements that we thought would help the Judges to understand the statistics about the defendants' business that had caused confusion in the initial appeal. And we introduced a new legal issue (regarding the need to prove first-party reliance at all in this case) that we had intentionally excluded from our strategy on the initial appeal. This required a considerable amount of fresh legal and record research and writing.

11. A similar dynamic existed when it came to other briefing in this case, including the petition for rehearing and the opposition to defendants' petition for certiorari. These are highly specialized filings in which expert counsel will focus on matters *other* than the merits of the case as such. Because we are appellate and Supreme Court specialists, we know from experience that the best petitions for rehearing *en banc* focus less on the merits and more on the existence of conflicts among the courts of appeals, the stakes of the legal question presented, and the prospect that the case will be overturned on Supreme Court review if the *en banc* court does not intervene.

Likewise, we know that an effective opposition to certiorari addresses factors well beyond the merits of the legal question, and that is reflected in the opposition we filed in this case. For this reason, both of these filings also required a considerable amount of fresh legal and record research, and also required me to write a very different kind of brief from the ones I had drafted before.

12.   This case also required a considerable amicus effort. Strong briefs from amici curiae are essential when the appellant has strong amici of its own (as defendants did here—enlisting the U.S. Chamber of Commerce in their appeal). And they are particularly necessary for a successful petition for rehearing *en banc*, because they demonstrate the importance of the case beyond the immediate parties. I spent many hours recruiting amici, strategizing with them to avoid duplication, and providing feedback on their drafts. I also spent many productive hours discussing this case with staff at the Federal Trade Commission, lobbying them to participate and ascertaining their views so that we could safely encourage the Fifth Circuit to seek those views if necessary.

13.   In preparing this fee petition, I reviewed the firm's time records associated with this case and conducted a comprehensive audit using email and other electronic records reflecting what work was performed each day. In the course of that audit, I zeroed out certain time that I deemed unproductive, totaling approximately 17.5 hours. These entries are marked in red on the attached detailed time record (Exhibit E). I also found that we did not have records of work that I know was performed by our student law clerks and staff members who performed cite-checks, reviewed drafts, prepared graphics, and helped with document formatting, document preparation, and other such matters. Moreover, our time sheet does not include time spent on matters related to the settlement and this fee petition since December 2017. Because of the length and detail of our time sheet (which I personally prepared, reviewed, and audited) and the length and detail of

this fee petition and associated filings, I estimate that I have expended well over 50 hours of additional, unrecorded time on this case since 2017.

14. For the foregoing reasons, I am certain that the time records reflected in Exhibit E represent a conservative accounting of G&R's total firm time on this case, and also represent the exercise of billing judgment. In addition to the facts in Paragraph 13, I know that we used outside, uncompensated mooters for multiple moot courts in this case. We also used a minimum amount of Mr. Goldstein's time, which comes at a higher rate, and avoided duplication and inefficiency by assigning the overwhelming bulk of the work to a single attorney. In my experience at other, larger law firms with similarly accomplished appellate practices, a matter of this size and importance would have been staffed with more appellate specialists, at considerably greater cost. Based on my experience, I believe it is safe to estimate that cost at well over $1,000,000.00.

15. I am an experienced appellate specialist with excellent credentials for the specialized work at issue here. I clerked at all three levels of the federal judiciary: for Judge James Robertson on the U.S. District Court for the District of the District of Columbia; for Judge David Tatel of the U.S. Court of Appeals for the District of Columbia Circuit; and for Justices Elena Kagan and Sandra Day O'Connor of the United States Supreme Court. I also served as a Counsel to the Assistant Attorney General in charge of the Antitrust Division at the United States Department of Justice. Apart from these jobs, spanning approximately four years, I have worked entirely in private practice as a Supreme Court and appellate litigation specialist since graduating from law school more than eleven years ago. I was a senior associate at Wilmer Cutler Pickering Hale and Door LLP in their appellate and Supreme Court practice group and am now a partner at G&R, which is nationally recognized as a top Supreme Court and appellate litigation boutique. I was counsel of record for the State of South Dakota in its prominent litigation successfully urging the

Supreme Court to overturn *Quill Corp. v. North Dakota* and permit states to collect sales taxes from internet vendors.  I have argued many cases in the federal courts of appeals.  And I have been the principal brief author in extraordinarily high-stakes appeals including the successful challenge to the $7 billion settlement between a merchant class and Visa and MasterCard, multiple appeals for plaintiffs in the LIBOR-fixing scandal, and several cases in the U.S. Supreme Court.

16. My rate and the rate for other partners at G&R apart from Mr. Goldstein is $850.  This rate is charged in full to many clients, and they pay it in full.  Because we are a small firm, many of our cases have alternative fee arrangements, including flat fees or contingent fee arrangements.  Even in these cases, we typically recover our full hourly rates on average.

17. Attorneys at G&R founded the Supreme Court Litigation Clinic at Harvard Law School, and I am one of the instructors of that clinic.  Both Mr. Goldstein and I are listed as Lecturers on Law in the faculty directory of the Harvard Law School.  *See* https://hls.harvard.edu/faculty/directory/.  We are both sought after as mooters in the Washington D.C. legal community.

18. G&R faces a complete demand on its time and would replace any work it chose not to do with an available stable of full-freight work of its choosing.  In fact, G&R has doubled in size during the time of this litigation from four attorneys to eight.  This growth accurately reflects the availability of replacement work, and the competitive nature of G&R's rates.

19. Mr. Goldstein's rate is currently $1,350, although we are applying a rate of $1,150 to his work on this appeal.  This premium rate is commensurate with other attorneys who have argued a similar number of cases in the Supreme Court—which is a very small group of people.  On information and belief, reasonable comparators for Mr. Goldstein charge higher rates, including (for example) Ted Olson ($1,800/hour) and Christopher Landau ($1,495/hour).

20. G&R understood at the time that it undertook this representation that there was a substantial risk of non-recovery, particularly because the Rule 23(f) petition had already been granted. The contingency arrangement that we negotiated reflected our considerable risk in this case. It is unlikely that we would have accepted this representation absent some assurance that we could recover the percentage of the attorneys' fee that we negotiated, or a multiplier *at least* as high as the one we are seeking in this matter. In our typical contingency arrangements, we often seek a multiplier of 3X on our time, especially when we believe there is a substantial risk of a zero recovery.

21. Exhibit A is a true and correct copy of the agreement executed by G&R (through Mr. Goldstein) and by Mr. Kochanowski and Mr. Prebeg. I helped to prepare and negotiate this agreement. It was negotiated back and forth, and ultimately signed at a lower rate than we initially requested.

22. Exhibit B is a true and correct copy of the agreement executed among other class counsel that was forwarded to me by Mr. Prebeg, Mr. Kochanowski, and Mr. Burnett. No one at G&R was involved in preparing this agreement, and we were not asked to sign it.

23. Exhibit C is a true and correct copy of an academic article we accessed from public sources. It is provided for the Court's convenience.

24. Exhibit D is signed declaration by Mr. David C. Frederick, an extraordinarily accomplished Supreme Court advocate whose practice parallels Mr. Goldstein's and whose firm performs comparable appellate and Supreme Court work. He has authorized me to file it on his behalf.

25. Exhibit E is a true and correct copy of the audited time report I prepared in connection with this petition. Red entries reflect time that was written off during that audit. The time

totals reported for each attorney are accurate; I verified them personally with each attorney involved. I am certain that this final, audited report is conservative, and does not reflect G&R's total time expended on the case. In the course of my audit, I wrote off time that I deemed unproductive, and identified several instances in which our use of student law clerks, staff, and outside mooters was not reflected in any charge on our time sheet.

26. Exhibit F contains true and correct copies of records of travel and printing expenses G&R incurred in this representation. Personal information (*e.g.*, home addresses) has been redacted from the travel documents.

27. Exhibits G and H are true and correct copies of publicly available news articles included for the Court's convenience.

28. Exhibit I is a true and correct copy of pages from a public filing that we have provided and excerpted for the Court's convenience.

/s/ Eric F. Citron
Eric F. Citron

Dated: August 31, 2018