Case 4:09-cv-02056   Document 430   Filed on 08/18/21 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JUAN RAMON TORRES, *et al*, | § § | CIVIL ACTION NO. 4:09-cv-02056 |
| Plaintiffs, | § § § § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § § | |
| SGE MANAGEMENT, LLC, *et al*, | § § § | |
| Defendants. | § | |

**OPINION AND ORDER**
**ON REMAND**

Judge Kenneth Hoyt previously awarded attorney fees and expenses to the various counsel for Plaintiffs and their respective law firms upon their successful settlement in this case. Counsel appealed that award, and the Fifth Circuit has remanded for further elaboration. Judge Hoyt subsequently recused, with the matter transferred to this Court.

All materials before Judge Hoyt when making his original award have now been independently reviewed, and the attorney-fee award has itself been considered in light of the familiar and controlling factors outlined in *Johnson v Georgia Highway Express, Inc*, 488 F2d 714 (5th Cir 1974). Based on such review, the Court awards *$3,010,428.00 in fees and $187,557.00 in expenses* to Matthew John Prebeg of Prebeg Faucett Abbott PLLC; *$1,766,994.00 in fees to and $184,347.00 in expenses* to Andrew Jack Kochanowski of Sommers Schwartz PC; *$1,963,327.00 in fees and $975.00 in expenses* to Jeffrey West Burnett of Jeffrey W. Burnett PLLC; *$1,570,661.00 in fees and $5,183.00 in expenses* to Eric Franklin Citron of Goldstein & Russell, PC; and *$1,505,223.00 in*

*fees and $80,305.00 in expenses* to Scott Monroe Clearman of The Clearman Law Firm, PLLC.

1. Background

This is a fee dispute between the counsel who brought and litigated this action. They ultimately obtained good results for their clients through a settlement reached in October 2018. Dkt 317. The dispute over fees has toiled on, being now on remand from the Fifth Circuit for a closer review of factors as directed in *Torres v SGE Management, LLC*, 945 F3d 347 (5th Cir 2019). The following facts are generally undisputed and drawn from the unanimous panel opinion by Judge Patrick Higginbotham as docketed at Dkt 387.

Plaintiffs initially retained Jeffrey Burnett and the eponymous firm of Jeffery W. Burnett, PLLC to bring claims against Defendants for creating a multi-level marketing program that they alleged was a fraudulent pyramid scheme. Burnett in turn hired Scott Clearman and his eponymous firm of The Clearman Law Firm LLP to initiate a class action against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act. They agreed to split any fees, with Burnett receiving 25 percent and Clearman receiving 75 percent.

Clearman later formed Clearman Prebeg LLP with Matthew Prebeg and thereafter assigned his former firm's fee interest to his new firm. Andrew Kochanowski of Sommers Schwartz, PC also eventually joined the case as class counsel. All counsel then entered into a new fee agreement under which Clearman Prebeg would receive 60 percent of any fees (to be split among its four partners) while Burnett and Sommers Schwartz would each receive 20 percent. Dkt 387 at 3.

Clearman unfortunately began to experience issues associated with substance abuse at some point in 2011. The various counsel dispute the extent of his involvement in the case thereafter. But it's apparent that the relationship between Clearman and fellow counsel (including his law partner, Prebeg) fractured and remains in a state of disrepair. Ibid.

Three partners eventually left Clearman Prebeg to form Prebeg, Faucett & Abbott, PLLC in January 2014. That same month Judge Kenneth Hoyt certified the class and named

Clearman, Kochanowski, and Prebeg as co-class counsel. The latter two engaged Goldstein & Russell to defend the class certification on appeal. The various counsel (excluding Clearman) then entered into a further amended fee arrangement in June 2014 under which Goldstein & Russell would receive between 16 percent and 18 percent of the total fee award (depending on the size) and Burnett would receive another 17 percent of the total. The remainder of any fee award was to be divided amongst Prebeg, Faucett & Abbott (51.99 percent), Sommers Schwartz (30.67 percent), and Clearman (17.34 percent). Id at 4.

The class action eventually settled, with class members able to choose between two options as consideration for releasing their claims. Dkt 289-1 (settlement agreement). One was a *cash option*, by which class members could receive 20 percent of the difference between the amount they paid to Defendants and the amount that Defendants paid them. The other was a *benefits option*, by which class members could receive a number of benefits relating to (among others) referral payments, conference admissions, and reinstatement into Defendants' sales program. Id at 15–16.

Judge Hoyt also ultimately awarded $9,816,633.00 in fees to counsel for Plaintiffs collectively, subject to allocation. Dkts 317, 336. Clearman sought to recover fully one-half of this award. Dkt 321 at 4. Judge Hoyt instead allocated him $1,505,223.00 in fees in a November 2018 order. Dkt 336. Clearman moved for reconsideration several weeks later, which Judge Hoyt denied the same day. Dkts 337, 339.

Clearman filed a notice of appeal in December 2018 as to the fee allocation. Dkt 342. Plaintiffs, Kochanowski and Prebeg (along with their respective firms), Burnett, and Thomas Goldstein and Eric Citron (along with their firm) filed a cross-appeal, urging that the allocation was appropriate and that the appeal should be dismissed. They argued in the alternative that Clearman shouldn't be allocated any fees, but that if he received any, he should receive "no more than $840,000 in fees and costs." Dkt 348 at 3.

The Fifth Circuit vacated the award and remanded "for elaboration of the trial court's reasoning under the *Johnson*

framework." Dkt 387 at 2, citing *Johnson* 488 F2d at 717–19. Clearman moved to recuse Judge Hoyt from the proceedings on remand, who did so on March 6, 2020. Dkts 403, 413. The action was then reassigned to this Court. Dkt 414.

Various counsel immediately filed voluminous post-remand motions regarding the dispute over attorney fees. See Dkts 388, 398, 410, 412, 419, 420. But remand in no way required a new record. Instead, each class member and associated class counsel were ordered to file a brief addressing their positions under the *Johnson* framework as to the material originally filed before Judge Hoyt. Dkt 421. The pending motions were all denied as moot.

Clearman filed a brief arguing that he should receive between 35 and 50 percent of the fee. Dkt 422. Citron and Burnett filed a brief arguing that the latter and his firm should receive 17 percent of the fee (totaling $1,662,724.72 in fees and expenses) while the former and his firm should receive 18 percent of the first $5 million, 17 percent of the next $3 million, and 16 percent of the remainder (totaling $1,703,182.65 in fees and expenses). Dkt 423 at 7–8. And Kochanowski and Prebeg filed a brief arguing that the former and his firm should be awarded $2,532,151.80 in fees and $184,347.26 in expenses while the latter and his firm should be awarded $3,164,170.00 in fees and $187,557.38 in expenses. Dkt 424 at 12, citing Dkts 291, 297. Kochanowski and Prebeg say that Citron and Burnett should be awarded the fees they request while Clearman, if he is to receive any fees, "is at most" entitled to $840,866.25 *after* all other counsel have been paid. Dkt 424 at 13.

The following chart summarizes the final attorney-fee allocation as originally determined by Judge Hoyt, as well as the current positions stated by counsel on remand:

**Attorney Fee Summary**

| Counsel | District Court award (Dkt 336) | Clearman's request (Dkt 422) | Prebeg and Kochanowski's request (Dkt 424) | Burnett and Citron's request (Dkt 423) |
|---|---|---|---|---|
| Clearman/ The Clearman Law Firm LLP | $1,505,223.00 (fees), $80,305.00 (expenses) | 35% to 50% of the total fees ($3,596,250.00–$5,137,500.00) | Nothing, but at most $840,866.25 | Nothing, but at most whatever amount remains after all other allocations are determined |
| Burnett/ Jeffrey W. Burnett, PLLC | $1,963,327.00 (fees), $975.00 (expenses) | No position | $1,662,724.72 | $1,662,724.72 |
| Citron/ Goldstein & Russell | $1,570,661.00 (fees) $5,183.00 (expenses) | No position | $1,703,182.65 | $1,703,182.65 |
| Prebeg/Prebeg, Faucett, & Abbot | $3,010,428.00 (fees), $187,557.00 (expenses) | No position | $3,164,170.00 (fees), $187,557.38 (expenses) | $3,164,170.00 (fees), $187,557.38 (expenses) |
| Kochanowski/ Sommers Schwartz PC | $1,766,994.00 (fees), $184,347.00 (expenses) | No position | $2,532,151.80 (fees), $184,347.26 (expenses) | $2,532,151.80 (fees), $184,347.26 (expenses) |

The Court eventually heard oral argument, with all relevant counsel appearing and articulating their respective positions on the fee dispute. Dkt 426.

   2. Legal standard

When assessing a class action settlement, district courts have an independent duty under Rule 23 of the Federal Rules of Civil Procedure to the class and the public to ensure that attorney fees are reasonable and divided up fairly among counsel for plaintiffs. Dkt 387 at 11 n 25, citing *In re Vioxx Products Liability Litigation*, 802 F Supp 2d 740, 772 (ED La 2011). Courts in the Fifth Circuit typically use one of two methods for calculating attorney fees in class actions. Under a *percentage method*, the court "awards fees as a reasonable percentage of the common fund." *Union Asset*

*Management Holding AG v Dell, Inc*, 669 F3d 632, 642 (5th Cir 2012). Under a *lodestar method* the court computes fees by multiplying the hours reasonably devoted to the litigation by a reasonable hourly rate, followed by an upward or downward multiplier applied at its discretion. Id at 643.

Judge Hoyt used the percentage method. This requires the court to establish a reasonable attorney-fee award upon consideration and weighing of twelve factors as set out by the Fifth Circuit in *Johnson v Georgia Highway Express, Inc*, being:

- *First,* the time and labor involved;
- *Second,* the novelty and difficulty of the questions;
- *Third,* the skill requisite to perform the legal services properly;
- *Fourth,* the preclusion of other employment due to the case;
- *Fifth,* the customary fee;
- *Sixth,* whether the fee is fixed or contingent;
- *Seventh,* time limitations;
- *Eighth,* the amount involved and results obtained;
- *Ninth,* the experience, reputation, and ability of counsel;
- *Tenth,* the undesirability of the case;
- *Eleventh,* the nature and length of the professional relationship with the client, and;
- *Twelfth,* awards in similar cases.

488 F2d at 717–19.

Not all factors will have "specific factual significance" in every case. *Longden v Sunderman*, 979 F2d 1095, 1100 (5th Cir 1992). This is particularly true when the sole question is the allocation of an award among counsel. Still, a district court must explain how each of the *Johnson* factors affects its award. *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F3d 220, 228 (5th Cir 2008). But it isn't an abuse of discretion to omit a lengthy analysis of each factor. *Forbush v JC Penney Co*, 98 F3d 817, 823 (5th Cir 1996), quoting *Louisiana Power & Light Co v Kellstrom*, 50 F3d 319, 331 (5th Cir 1995), cert denied, 516 US 862 (1995).

So long as the district court "has articulated and clearly applied the criteria," the Fifth Circuit doesn't require the findings "to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *Forbush*, 98 F3d at 823, quoting *Louisiana Power & Light*, 50 F3d at 331.

3. Analysis

The sole task on remand is to elaborate "the trial court's reasoning under the *Johnson* framework." Dkt 387 at 1. Each factor will be addressed in turn.

a. Time and labor involved

The Fifth Circuit instructs on consideration of the first *Johnson* factor:

> The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

488 F2d at 717.

After Judge Hoyt granted the motion for preliminary approval of the settlement, Kochanowski, Burnett, Citron, Clearman, and Prebeg each submitted separate motions for attorney fees. Dkts 291, 292, 295, 296, 297. It appears that one reason for the disjointed effort was because Clearman didn't

7

maintain billing records. Indeed, Clearman later acknowledged, "I never cared to record my hours as I would rather focus on getting results and being rewarded accordingly." Dkt 387 at 5 (internal quotations omitted). This made a unified fee petition impracticable from the outset.

Both Burnett and Citron and Kochanowski and Prebeg filed detailed time records along with their fee petitions. Dkts 291-1, 292-6, 295-6, 297-9. Burnett asserts that he billed "at least 1,200 hours of work" over nine years, and Citron asserts that he billed 936.25 hours handling appellate matters for the class. Dkt 423 at 9–10. Kochanowski claims that he "led a team of seven Sommers lawyers who billed 2,488 hours at a blended rate of $458 (historical) or $574 (actual) in the litigation." Dkt 424 at 5. Prebeg claims that he and his firm "recorded 4,153 hours of time on the litigation" and "billed at an average rate of $424.26," while excluding any time Clearman claimed to work while partnered with Prebeg. Id at 5–6.

For his part, Clearman filed his initial fee petition in September 2018, seeking $5,000,000.00 (being approximately 50 percent of the fees remaining after expenses) upon assertion that he devoted "at least 3000 productive hours" to the case. Dkt 298 at 32. A number of motions to strike that fee petition followed because Clearman didn't offer contemporaneous time sheets. Dkts 303, 305, 307. Judge Hoyt struck the petition and ordered Clearman to file a revised petition that "set forth time expended and his usual and customary rates as well as incurred expenses." Dkt 316. Clearman submitted a new fee petition with reconstructed time records several weeks later, again seeking half of the fees after expenses—but this time claiming he billed 4,150 hours. Dkts 321, 321-1 (time records). This again drew objection from the class representatives. Dkt 335.

Clearman continues to maintain that he and his associates worked on this case for over nine years and billed 4,310 hours after subtracting the hours he billed from 2014–2016, which he has withdrawn. Dkt 422 at 8. Clearman also claims that he "owns" any time worked by Clearman Prebeg LLP lawyers while the firm existed from 2011 to 2013, which would add an

additional 2,410 hours to Clearman's time (for a total of 6,720 hours). Id at 9–10.

Burnett and Citron contend that the time records supposedly "reconstructed" by Clearman are neither accurate nor credible, thus providing reason to reject his fee application outright. Dkt 423 at 14. Prebeg and Kochanowski likewise argue that Clearman's time records are "pure fabrication." Dkt 424 at 7. They note that Clearman wasn't involved in the litigation after 2013. And, for example:

> Briefing Counsel painstakingly went through Clearman's submission to discover that: he claims to have worked over 9 hours a day, 424 hours total, to just write the complaint; billed over 100 hours drafting a 5 page sur-reply brief; billed 170 hours going over the "record" of a single-issue dismissal; then spent 550 more hours briefing the single issue; 370 hours watching the same video clips over several years; 669 hours of 10 to 14 block hours, and so forth.

Id at 10.

A lack of contemporaneous billing statements doesn't *per se* preclude an award of fees. But the Fifth Circuit requires that the evidence be adequate to determine reasonable hours. *Gagnon v United Technisource Inc*, 607 F3d 1036, 1044 (5th Cir 2010). Clearman here responded to Prebeg's initial fee petition by stating that "if this Court wants Clearman to fabricate time records retroactively like Prebeg has, Clearman will do so." Dkt 131 at 13. That attitude is consistent with his evolving estimate of the number of hours he devoted to this case. Clearman no doubt devoted many hours to this case over a number of years. But nothing corroborates the veracity of his retroactive estimates.

The first *Johnson* factor doesn't weigh in favor of Clearman for the simple reason that no reliable records credibly establish his time and labor invested in the case. In descending order of credible time records presented, this factor weighs most heavily in favor of Prebeg and his firm, followed by Kochanowski and

his firm, Burnett and his firm, Citron and his firm, and only then by Clearman and his firm.

### b. Novelty and difficulty of the questions

The Fifth Circuit observes as to the second *Johnson* factor, "Cases of first impression generally require more time and effort on the attorney's part." 488 F2d at 718. And further, counsel shouldn't "be penalized for undertaking a case which may make new law," but should instead "be appropriately compensated for accepting the challenge." Ibid.

The briefs by Burnett and Citron and Prebeg and Kochanowski don't address this factor at all. That's likely because it doesn't appear applicable to fee-allocation disputes between counsel—as opposed to establishing the requisite amount of the overall fee to be awarded. This is so because questions and issues presented by a case are generally common to all counsel, whether difficult or routine.

Even so, Clearman asserts that this factor weighs in his favor because his "contributions involved novel and difficult issues that required highly developed skills to perform." Dkt 422 at 8. He specifically congratulates himself for avoiding arbitration. Ibid. By this, he attempts to compartmentalize his work as to one aspect of the case. To the contrary, this factor considers the novelty or difficulty of the case holistically. But even if this factor was accorded with Clearman's understanding, nothing explains how the tasks performed by other counsel were any less novel or difficult than those he claims to have performed.

The second factor appears to be inapplicable. As such, it doesn't weigh in favor of shifting the fee allocation in favor of any counsel or firm.

### c. The skill required to properly perform the legal services

The Fifth Circuit instructs as to the third *Johnson* factor, "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." 488 F2d at 718. And further, "The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of

lawyers at work become highly important in this consideration." Ibid.

Clearman argues that the third *Johnson* factor weighs in his favor for the same reasons that the second factor also supposedly weighs in his favor. Dkt 422 at 8. Prebeg and Kochanowski argue to the contrary that "Clearman had virtually no role in the certification of this class" and "played virtually no role in the litigation itself during and post certification." Dkt 424 at 12. Burnett and Citron address the third factor by acknowledging that Clearman "appears to have been a skilled attorney," but they argue that his "absence meant he was unable to apply that skill to perform work on behalf of the class much of the time." Dkt 423 at 10. Burnett and Citron further argue that they (along with Kochanowski and Prebeg) are "experienced, reputable, and able attorneys" whose expertise led to the settlement, while specifically highlighting Citron "whose specialized appellate skills were vital to successfully upholding class certification and, ultimately, obtaining relief for the class." Ibid.

It was Clearman who moved to recuse Judge Hoyt. Dkt 403. And so it is he who has imposed a disadvantage in the weighing of this factor for the very reason that Judge Hoyt isn't now available to consider—in light of his own considerable expertise obtained from his decades of distinguished service on the bench—the work product, preparation, and performance of various counsel that he observed in real time. It instead devolves to this Court as a *post hoc* determination based on a cold record.

Aside from referencing Citron's specific skills regarding the appeal of the class certification, none of the briefs articulate any identifiable skill that isn't common and in ready supply amongst any group of competent class counsel that have already been appointed as lead counsel. True, a RICO class action isn't a garden-variety tort or contract claim. But then again, this action was ultimately resolved by a settlement following motion practice, discovery, and class certification. There was neither a trial nor an appeal on the merits. All counsel without question appear to have devoted their talents to resolving the matter. But which counsel did what (and how well they did it) isn't apparent on this attorney-fee record.

The third *Johnson* factor doesn't shift the fee allocation in favor of or away from any counsel or firm.

    d. The preclusion of other employment due to this case

The Fifth Circuit explains as to the fourth *Johnson* factor that the trial court should consider "otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." 488 F2d 714, 718.

Clearman argues that his "commitment of time and resources precluded him from taking on other significant matters—generally more so than other litigation counsel on the case, who worked in larger firms with diversified practices." Dkt 422 at 7. Citron argues on behalf of himself and his firm that "every hour spent on this case took time away from other cases (and other cases the firm could have taken)." Dkt 423 at 11 (internal quotations and citations omitted). Burnett and Prebeg and Kochanowski don't address this factor in their respective briefs.

What Citron says is true, but it applies equally to all. Every lawyer who devoted any time to this matter undoubtedly had to decline some amount of work as a result at some point. That's the nature of the litigation business. Surprisingly, no one addresses the fact that Clearman's substance abuse was itself a leading cause of his taking on less work as to this case—and in his practice as a whole. If anything, this factor cuts at least slightly against him.

The fourth *Johnson* factor doesn't shift the fee allocation in tremendous favor of any counsel or firm, but it does slightly disfavor Clearman.

    e. The customary fee

The Fifth Circuit directs as to the fifth *Johnson* factor that the trial court should consider the "customary fee charged" for the relevant services that counsel performed "in the relevant community." 488 F2d at 718.

The various counsel don't address this factor in their respective briefs. And so for this factor, at least, it appears that they agree that it applies to them all equally. As such, it doesn't weigh in favor of shifting the fee allocation in favor of any counsel or firm.

### f. Whether the fee is fixed or contingent

The Fifth Circuit observes as to the sixth *Johnson* factor, "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." 488 F2d at 718.

It's clear that all counsel represented Plaintiffs on a contingent basis. But this factor addresses the size of the overall award—and not, for instance, the various allocation agreements reached between counsel at different phases of this litigation, as noted above. Indeed, the various counsel don't address this factor in their respective briefs, appearing to agree that it applies to them all equally. As such, this factor doesn't weigh in favor of shifting the fee allocation in favor of any counsel or firm.

### g. Time limitations imposed by the client or the circumstances

The Fifth Circuit holds as to the seventh *Johnson* factor, "Priority work that delays the lawyer's other legal work is entitled to some premium." 488 F2d at 718. And it also observes that this factor "is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." Ibid.

Neither Clearman nor Prebeg and Kochanowski specifically address this factor in their respective briefing. Burnett argues that his time "is limited" as a solo practitioner and that this case "demanded a lot of work, often on short notice and against capable attorneys." Dkt 423 at 10. Citron argues that he and his firm "faced a complete demand on their time and every hour spent on this case took time away from other cases." Id at 11 (internal quotations and citations omitted).

This factor doesn't weigh in favor of either Clearman or Prebeg and Kochanowski. It does weigh in favor of Citron because he was brought on to prosecute the appeal of class

certification at a later stage in the proceedings. It also weighs slightly in favor of Burnett for the reasons that he states. The fact that he has been a solo practitioner throughout this action lends credibility to his argument.

    h. The amount involved and the results obtained

The Fifth Circuit observes as to the eighth *Johnson* factor that the court "should consider the amount of damages . . . awarded," but that such consideration should not obviate its "scrutiny of the decision's effect on the law." 488 F2d at 718. Here, the exact settlement amount isn't clear from the agreement itself. See Dkt 289-1 at 16. But there's no question that the result was favorable for Plaintiffs, with the litigation resulting in precedent helpful to plaintiffs in future RICO class actions.

Clearman argues that the eighth *Johnson* factor "has been consistently recognized as 'the most important.'" Dkt 422 at 7, quoting *Bear Ranch, LLC v Heartbrand Beef, Inc*, 885 F3d 794, 803 (5th Cir 2018). He also offers brief and conclusory argument that his requested relative-contribution percentage of 50 percent "accords with Factor 8 of the Johnson factors." Dkt 422 at 7. But he offers no further support or argument as to why this is so.

Burnett and Citron argue that they, along with Kochanowski and Prebeg, obtained "an excellent result" for the class "in large part by obtaining class certification and upholding it on appeal." Dkt 423 at 10 (citations omitted). By contrast, they point to Clearman's admission that "his participation in the class certification briefing and the hearing was much diminished," given that he had "checked himself in for alcoholism treatment" at the time the class was certified. Ibid, quoting Dkt 392 at 12 (internal quotations omitted). Kochanowski and Prebeg also assert that Clearman didn't meaningfully contribute in certification or after the class was certified. Dkt 424 at 12.

Clearman hasn't sufficiently connected his early efforts to the settlement in a way that distinguishes his performance from that of his co-counsel. It's evident that he played a substantial role during the early part of this action, putting a great deal of work into its development. That work has and should be valued. But he simply wasn't as substantially involved in certifying the class

or thereafter. And that latter work is what most directly enabled successful settlement.

Given the actual reason for the results obtained, this factor weighs in favor of all counsel except for Clearman.

### i. The experience, reputation, and ability of the attorneys

The Fifth Circuit observes as to the ninth *Johnson* factor, "Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." 488 F2d at 718–19. "Longevity *per se*, however, should not dictate the higher fee." Id at 719.

Meaningful difference in the experience, reputation, and ability of various counsel isn't apparent. But of course, the factor by its nature invites each to brag on himself (and, at times, to demean others) in a self-interested way. And so, Clearman argues that the ninth *Johnson* factor weighs in his favor because his "experience, reputation and ability for class and RICO litigation (Factor 9) can hardly be rivaled." Dkt 422 at 8. Kochanowski argues that his firm "has been involved in many class actions, and its partners have litigated class cases for decades, and didn't need Clearman's purported skills." Dkt 424 at 12. Prebeg argues that he "also had prior class action experience, and extensive experience in complex litigation." Ibid. Burnett claims that he's a "reputable attorney with a skillset involving complex, numbers-oriented legal issues." Dkt 423 at 11. And Citron notes that he's a "highly regarded appellate lawyer at one of the Nation's finest appellate firms." Ibid. Burnett and Citron also acknowledge that Clearman "was a skilled attorney," but they argue that "he was unable or unwilling to represent the class and do the necessary work after 2013." Ibid.

Let's leave it at this. Such arguments between former co-counsel—who have together successfully created and resolved a significant litigation matter—are somewhat unseemly and unbecoming of dignified practice. All counsel are well established and leveraged their respective skills to institute a class action, achieve its certification, and confect a settlement. They did so as a group, at different stages and at different times. Human

circumstances and personal strife led to a rupture in overall harmony after years of toil. But that is a story often told.

This factor doesn't weigh in favor of shifting the fee allocation towards or away from any counsel or firm in particular. Their individual experience, reputation, and ability are adequately assessed under other factors devoted to work performed and results obtained.

j. The political "undesirability" of the case

The Fifth Circuit contemplated cases involving civil rights when establishing the tenth *Johnson* factor, specifically noting that the "decision to help eradicate discrimination is not pleasantly received by the community." 488 F2d at 719. While this factor could certainly be conceived to fit an array of at-the-time-unpopular litigation stances, nothing suggests that this class action under the RICO laws is one of them. Even if it did, the relative political undesirability of a case would affect all counsel equally.

Only Clearman attempts to argue that this factor weighs in his favor because "the case was very risky and therefore undesirable" when he "committed to bring and fund it." Dkt 422 at 8. Without elaboration, he also says that "only he was the subject of ridicule for prosecuting the case" because other counsel "joined the case after the risk had diminished." Ibid.

This confuses political undesirability with overall perception of litigation risk and economics—which is accounted for by at least the second *Johnson* factor. This factor doesn't weigh in favor of shifting the fee allocation in favor of any counsel or firm.

k. The nature and length of the professional relationship with the client

The Fifth Circuit recognizes as to the eleventh *Johnson* factor, "A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." 488 F2d at 719. It also observes that the trial court "may appropriately consider this factor in determining the amount that would be reasonable." Ibid. Basically, this factor appears directed towards what is known internally within law firms as *client attribution* or *client origination*.

Neither Clearman nor Prebeg and Kochanowski specifically address this factor. Burnett notes that he "originated the named plaintiffs and class representatives, and he was the primary point of contact with those clients throughout the case." Dkt 423 at 11. He also explains that both appointed class representatives were his clients "long before this case." Ibid. Citron argues that he "provided exactly the work he was asked to provide (and more) and seeks only the fee that the class representatives previously agreed to." Id at 11–12. Citron and Burnett also persuasively note that Clearman had no prior relationship with the clients and that "the class representatives dismissed Clearman because of his unprofessional behavior and objected to his fee petition as disproportionate to the services he rendered." Ibid.

The eleventh *Johnson* factor certainly weighs in favor of Burnett, given his long relationship with the class representatives. And it is neutral as to Prebeg, Kochanowski, Citron, and their respective firms. But it weighs against Clearman. Granted, he joined the case at an early stage, but the class representatives raise serious allegations about his performance and working relationship with class members. See Dkt 303 at 16.

l. Awards in similar cases

The Fifth Circuit counsels as to the twelfth *Johnson* factor, "The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." 488 F2d at 719.

This factor of its nature relates to the size of an overall fee award, not to disputes between counsel related to portions of that fee award. And the various counsel don't directly address it, appearing to agree that the factor applies to them all equally. As such, this factor doesn't weigh in favor of shifting the fee allocation in favor of any counsel or firm.

4. Conclusion

In summary, the Court FINDS as to the *Johnson* factors that:

- *Factor one* weighs most heavily in favor of Prebeg and his firm, followed by Kochanowski and his firm, Burnett and his firm, Citron and his firm, and finally Clearman and his firm;

- o *Factor four* doesn't weigh in favor of any counsel or firm, but it does slightly disfavor Clearman;
- o *Factor seven* weighs in favor of Citron and slightly in favor of Burnett, but not in favor of any other counsel;
- o *Factor eight* weighs in favor of all counsel except for Clearman
- o *Factor eleven* weighs in favor of Burnett and against Clearman, and is neutral as to Prebeg, Kochanowski, Citron, and their respective firms; and
- o *Factors two, three, five, six, nine, ten, and twelve* don't weigh in favor of any counsel as compared to any other.

To be clear, none of the *Johnson* factors independently and affirmatively establish that Clearman is entitled to a fee award most heavily weighted in his favor. And nothing comes close to supporting an allocation to him of 50 percent of the overall fee. The very contention borders on frivolous.

What does this mean as to the appropriate allocation? That's a matter devoted more to experience, rather than any precise metric of logic or statistics. And in that view, the fee award by Judge Hoyt—who dealt with counsel and this litigation from inception to its conclusion after settlement—was correct. A lesser award to Clearman certainly wouldn't have been surprising, given his failure to maintain and present any reasonable account of his time, along with his admittedly lessened ability to continue on with the litigation during and after class certification. But then again, the award by Judge Hoyt in fact reflected a steep discount as against the amount requested by Clearman and his hours presented.

Having now reviewed all materials before Judge Hoyt when making his original fee award, and also having considered each of the factors outlined in *Johnson v Georgia Highway Express, Inc*, 488 F2d 714 (5th Cir 1974), attorney fees are AWARDED as follows:

- *$3,010,428.00 in fees and $187,557.00 in expenses* to Matthew John Prebeg of Prebeg Faucett Abbott PLLC;
- *$1,766,994.00 in fees and $184,347.00 in expenses* to Andrew Jack Kochanowski of Sommers Schwartz PC;
- *$1,963,327.00 in fees and $975.00 in expenses* to Jeffrey West Burnett of Jeffrey W. Burnett PLLC;
- *$1,570,661.00 in fees and $5,183.00 in expenses* to Eric Franklin Citron of Goldstein & Russell, PC; and
- *$1,505,223.00 in fees and $80,305.00 in expenses* to Scott Monroe Clearman of The Clearman Law Firm, PLLC.

SO ORDERED.

Signed on August 18, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge